NUMBER 13-08-00583-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


THE STATE OF TEXAS, Appellant,


v.


VICTOR VILLARREAL, Appellee.

 




On appeal from the 93rd District Court of 


Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Garza, and Benavides 

Memorandum Opinion by Justice Yañez

 Pursuant to a plea agreement with the State, appellee, Victor Villarreal, pleaded
guilty to possession of marihuana in an amount of more than four ounces but less than five
pounds on June 20, 1991. (1) On September 4, 2008, the trial court granted Villarreal's
application for post-conviction writ of habeas corpus. By three issues, appellant, the State,
contends that the trial court abused its discretion by granting Villarreal's writ. (2) We affirm.

I. Background

 Villarreal was charged with possession of marihuana in an amount of more than four
ounces but less than five pounds on March 28, 1991. Pursuant to a plea agreement with
the State, Villarreal pleaded guilty to the charge, and the trial court deferred adjudication
and placed Villarreal on probation for a term of ten years. The trial court granted the
State's motion for early termination of Villarreal's probation on September 28, 1993.

 In 2008, Villarreal filed an application for post-conviction writ of habeas corpus
alleging that he did not enter his plea of guilty to the 1991 charge knowingly or voluntarily
and that he did not "fully understand the consequences of his plea" because the trial court
failed to properly admonish him pursuant to Article 26.13 of the Texas Code of Criminal
Procedure. Specifically, Villarreal claimed that the trial court failed to inform him that a plea
of guilty or nolo contendere may result in deportation." (3) In its response, the State generally
denied Villarreal's allegations and asserted that the doctrine of laches barred habeas
corpus relief. Specifically, the State argued that it had been "seriously prejudiced by the
seventeen (17) year delay between the occurrence of the alleged error and [Villarreal's]
complaint" and that Villarreal's "lengthy delay in complaining about the voluntariness of his
plea seriously affect[ed] the credibility of his complaint."

 The trial court held a hearing on Villarreal's application for post-conviction writ of
habeas corpus relief on June 19, 2008. At this hearing, the State argued that it was
prejudiced because it could not respond to the issue of whether Villarreal had been
properly admonished without a record of the 1991 proceedings. The State also argued
that Villarreal's harm did not result from the trial court's alleged failure to admonish him
regarding the possible immigration consequences.

 Villarreal then filed a motion to reopen the case, informing the trial court that the
Honorable Fernando Mancias, the judge who sentenced Villarreal to deferred adjudication
probation, could provide testimony to assist it in reaching a decision. The trial court held
a second hearing on September 4, 2008, allowing Judge Mancias's testimony.

 Judge Mancias testified that he was a presiding judge of the Ninety-third District
Court in Hidalgo County from January 1, 1989 until December 31, 2000. Villarreal asked
Judge Mancias to review a document entitled "Admonitions of the Court to the Defendant
Prior to the Granting of Deferred Adjudication Probation." Judge Mancias stated that
although his signature appeared on the form, Villarreal's and his attorney's signatures were
missing; however, Judge Mancias stated that he believed that at the time of Villarreal's
plea, the signatures were not required. Villarreal asked Judge Mancias if the admonitions
included an instruction that if Villarreal was a resident alien or not a citizen of the United
States, a plea of guilty would affect his immigration status. Judge Mancias replied that the
admonitions on the document did not include such a warning. Villarreal asked Judge
Mancias if the admonitions of article 26.13 were required to be made either orally or in
writing, and Judge Mancias responded that those admonition requirements "came into
effect sometime in the mid[-]1980s, but they began to really be enforced like in 1995 or
1996. . . .  In terms of us making sure that we admonished the defendants if they were not
U.S. citizens of the immigration consequences." Judge Mancias then testified that it was
"very highly improbable" that he would have admonished "anyone about the consequences
of a plea if they were not U.S. citizens" from 1991 "up until about 1994." Judge Mancias
explained that at that time, "[i]t was improbable [he] would ask [the defendants] if they were
U.S. citizens and also very highly improbable that [he] would admonish [the defendants]
that a guilty plea could possibly result in adverse immigration consequences." Then Judge
Mancias stated that he remembered Villarreal's particular case because Villarreal was
"involved with horses" and that Villarreal's attorney at the time stated that Villarreal was
asking for deferred adjudication "so he wouldn't be deported to Mexico." According to
Judge Mancias, "back in the late '80s and early '90s, a non-U.S. citizen that was given
deferred adjudication was almost like a guarantee that he would not be deported." Judge
Mancias stated that it became more important for him to admonish a defendant who was
not a U.S. citizen of the consequences of a guilty plea in "'95 or '96."

 On cross-examination by the State, Judge Mancias agreed that article 26.13 of the
code of criminal procedure requiring an admonishment about possible immigration
consequences "went into effect in 1985" and that Villarreal pleaded guilty six years later.
Judge Mancias insisted that it was "highly improbable" that he would have admonished
Villarreal on any immigration consequences even though such an admonishment was
required by law. The State then asked Judge Mancias if he was aware that in 1991, "the
Fifth Circuit held that deferred at that time was not a conviction" and that "[i]t was only later
when they passed something called Illegal Immigration Reform and Immigrant
Responsibility Act effective April 1997 that they said that that would be considered a
conviction and get you into immigration problems." Judge Mancias agreed. However,
Judge Mancias stated that he did not know whether there would have been a different
outcome if he had properly admonished Villarreal concerning the consequences of his
plea.

 The trial court granted Villarreal's writ, stating that "Judge Mancias'[s] testimony is
clear. The law was that he should have told him and he didn't tell him." The trial court set
aside Villarreal's conviction in the underlying criminal case and entered an order granting
Villarreal's application for post-conviction writ of habeas corpus. After the State filed a
motion requesting that the trial court make the statutorily required findings of fact and
conclusions of law supporting its ruling, (4) the trial court did so.

 The trial court made the following findings of fact:

 6) The trial court accepted and entered as evidence, without objection,
the business records of attorney, Clyde M. Taylor, Jr., which included
the affidavit of the Applicant [Villarreal].


 7) The Trial Court found that the transcription of the plea colloquy was
not found and thus unavailable for review.


 8) [Villarreal's] attorney of Record at the time the plea was taken was the
Honorable Joe Chapa.


 9) The Presiding Judge at the time that the plea was taken was the
Honorable Judge Fernando Mancias.


 10) The affidavit of [Villarreal], admitted as evidence without objection,
stated that "[n]either [t]he (Honorable Joe Chapa) nor the judge
(Honorable Judge Fernando Mancias) ever told me that because I
was a resident alien this probation would affect my immigration status
in the United States."


 11) No plea documents demonstrating that the plea admonishments were
given to [Villarreal] or that bore [Villarreal's] signature, were presented
by either the State or [Villarreal].


 12) An [sic] document titled "Admonitions of the Court to the Defendant
Prior to the Granting of Deferred Adjudication Probation" was
presented by [Villarreal] without the signature of either [Villarreal] or
[Villarreal's] attorney of record at the time of the plea[,] the Honorable
Joe Chapa.


 13) Testimony adduced regarding the above "Admonitions of the Court"
from the Honorable Judge Fernando Mancias was that it was unlikely
that the admonitions "regarding immigration consequences" were
given to [Villarreal] at the time of the plea.


 14) "Admonitions of the Court to the Defendant Prior to the Granting of
Deferred Adjudication Probation" contains no admonition regarding
the "immigration consequences of the plea."


The trial court entered the following conclusions of law:

 15) Before accepting a guilty plea, the trial judge must admonish the
defendant of the range of punishment, as well as the plea's potential
affect [sic]on the defendant's citizenship. Tex. Code Crim. Proc. Ann.
art. 26.13(a)(4) (Vernon 1989).


 16) If a plea is not entered knowingly and voluntarily, it has been obtained
in violation of due process and is void. McCarthy v. United States,
394 U.S. 459, 466 (1969).


 17) In considering whether a plea is voluntary[,] the trial court must
examine the record as a whole. Martinez v. State, 981 S.W.2d 195,
197 (Tex. Crim. App. 1998); see Boykin, 395 U.S. at 242; Aguirre-Mata v. State, 125 S.W.3d 473, 474 (Tex. Crim. App. 2003).


 18) The trial court must determine whether a defendant entered a
voluntary guilty plea, and must consider whether the record shows
that the trial court admonished the defendant as required; if so, the
admonishments are prima facie evidence that the defendant's guilty
plea was knowing and voluntary. See Fuentes v. State, 688 S.W.2d
542, 544 (Tex. Crim. App. 1985); Courtney v. State, 39 S.W.3d 732,
736 (Tex. App.-Beaumont 2001, no pet.).


 19) If duly admonished, the defendant must show he entered his plea
without understanding the consequences and suffered harm from
doing so. See Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim.
App. 1998).


 20) Waiver of a constitutional right which is not voluntary or is made
without knowledge of the consequences violates due process. Boykin
v. Alabama, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969).


 21) These constitutional errors are reviewed under the standard set out
in Rule of Appellate Procedure 44.2(a). Where the defendant
complains only of the failure to follow the dictates of the statute, we
must apply Rule 44.2(b) and determine if the error affects a
substantial right. Aguirre-Mata v. State, 992 S.W.2d 495, 499 (Tex.
Crim. App. 1999).


Finally, the trial court applied the law to its findings, stating the following:

 22) The Applicant [Villarreal] was not admonished, in writing, as the plea's
potential affect [sic] on the defendant's citizenship.


 23) It appears from the record available, testimony of witnesses,
testimony by affidavit of [Villarreal] that no oral admonitions were
given to [Villarreal] regarding the plea's potential affect [sic] on
[Villarreal's] citizenship.


 24) The failure to admonish [Villarreal] at the time of sentencing affected
and currently affects [Villarreal's] substantial rights.


 25) The evidence before this Court establishes by a preponderance of the
evidence that the Applicant Victor Villarreal's plea was not "knowingly
and voluntarily" entered, has been obtained in violation of due
process and is void.


This appeal ensued.

II. Standard of Review and Applicable Law

 The applicant seeking relief bears the burden of proof in a habeas corpus hearing. (5) 
To prevail on a writ of habeas corpus, the applicant must prove his allegations by a
preponderance of the evidence. (6) The court of criminal appeals has held that a party
collaterally attacking a judgment of conviction on the ground that he was not admonished
pursuant to 26.13(a)(4) must show that no admonishment was given and that the lack of
the admonishment affected his decision to plead guilty. (7)

 In reviewing a trial court's decision on an application for writ of habeas corpus, we
review the facts in the light most favorable to the trial court's ruling, and we will uphold the
trial court's ruling absent an abuse of discretion. (8) Although we afford almost total
deference to the trial court's determination of the historical facts, those facts must be
supported by the record. (9) "If the resolution of the ultimate questions turns on an
application of legal standards, we review the determination de novo." (10)

 Article 26.13 of the code of criminal procedure requires that prior to a defendant's
plea of guilty or nolo contendere, a trial court must provide certain admonitions, including
among other things, a warning that if the defendant "is not a citizen of the United States
of America, a plea of guilty or nolo contendere for the offense charged may result in
deportation, the exclusion from admission to this country, or the denial of naturalization
under federal law." (11) The trial court may admonish the defendant either in writing or orally
and substantial compliance with article 26.13 is sufficient. (12) However, "[t]o claim that an
admonishment was in substantial compliance even though it was never given is a legal
fiction." (13)

 Although article 26.13 is designed to protect a defendant's constitutional rights when
pleading guilty or nolo contendere, "the admonitions . . . are not themselves constitutionally
required." (14) Therefore, the court of criminal appeals has found that the failure to provide
the required admonition regarding the immigration consequences of a plea is a non-constitutional error. (15) "This non-constitutional violation of Article 26.13 is subject to a harm
analysis under Rule of Appellate Procedure 44.2(b), for those errors other than
constitutional error. 'Any other error, defect, irregularity, or variance that does not affect
substantial rights must be disregarded.' If the error affected substantial rights, then, it is
not harmless." (16)

 "The critical question is, '[C]onsidering the record as a whole, do we have a fair
assurance that the defendant's decision to plead guilty would not have changed had the
court admonished him?'" (17) Our "fair assurance" determination involves three issues: 
"whether the appellant knew the consequences of his plea; the strength of the evidence
of the appellant's guilt, and the appellant's citizenship and immigration status." (18) Neither
party has the burden of proving harm or harmlessness resulting from the error. (19) 
Furthermore, "when the trial court fails to admonish a defendant about the immigration
consequences of his guilty plea, a silent record on citizenship, or a record . . . that is
insufficient to determine citizenship, establishes harm by the standard of Rule 44.2(b)." (20)

III. Harm Analysis

 By its first issue, the State contends that the trial court abused its discretion because
Villarreal failed to show that he was harmed. The State asserts that Villarreal cannot show
that he was harmed because Villarreal did not actually "face adverse immigration
consequences in 1991 from his deferred adjudication plea." The State does not challenge
the trial court's findings that Villarreal was not admonished, in writing or orally regarding the
plea's potential effect on his citizenship, and it does not dispute that Villarreal is not a
United States citizen. Furthermore, the State does not challenge the trial court's
conclusions that Villarreal's plea was not knowingly and voluntarily entered, was obtained
in violation of due process, and is void.

 The State first argues that Villarreal cannot show harm because at the time of his
guilty plea, a deferred adjudication was not a final conviction for immigration purposes;
therefore, had the trial court admonished Villarreal of the immigration consequences as
they existed at the time, Villarreal would not have changed his plea. (21) However, the State
did not specifically make that complaint to the trial court. (22) Instead, the State only objected
to Villarreal's application for habeas corpus relief on the basis that it was barred by the
doctrine of laches. (23) The State's argument on appeal does not comport with its argument
to the trial court; therefore, it has not preserved its argument for our review. (24) The State
also argues on appeal that the trial court had no duty to admonish Villarreal of possible
deportation because it is a collateral consequence of a guilty plea. However, because the
State's argument on appeal does not comport with its arguments to the trial court, it has
failed to preserve this error as well. (25) Moreover, the court of criminal appeals has held that
a party is entitled to habeas corpus relief for the trial court's failure to admonish him
regarding the immigration consequences of his plea. (26)

 Next, the State argues that "there was no requirement to admonish [Villarreal] of the
possible use of his present conviction for enhancement in a subsequent offense, there was
no error wrought by the [deferred adjudication] trial court." This argument has no merit
because the trial court found that error existed because Villarreal was not admonished
regarding the immigration consequences of his plea. Moreover, the trial court did not find
that there was error because Villarreal was not admonished concerning the enhancement
consequences of his guilty plea.

 In this case, the trial court found that Villarreal did not know the consequences of
his plea. This finding is supported by the record because Villarreal stated in his affidavit
that he was not told that his immigration status would be affected by his guilty plea, Judge
Mancias testified that he did not provide the required admonition, and the written
admonishments do not contain a warning of the possible immigration consequences of
Villarreal's guilty plea. (27) The State argues that there is ample evidence from which it can
be inferred that Villarreal was aware of the consequences of his plea. Specifically, the
State points to evidence that Villarreal wanted deferred adjudication so that he would not
be deported and that at the time of Villarreal's guilty plea, deferred adjudication was not a
final conviction for immigration purposes. However, this evidence also supports a
conclusion that had the trial court warned Villarreal, as required by the Legislature in 1991,
that a guilty plea could result in deportation or being forever denied the opportunity of
becoming a naturalized citizen, he would not have pleaded guilty. Furthermore, the record
in this case does not contain a reference to the information the admonishment would have
provided. (28) In fact, Judge Mancias testified that it was "highly improbable" that he gave
Villarreal the admonition concerning the immigration consequences of his guilty plea. 
Therefore, because the record supports the trial court's finding that Villarreal did not know
the consequences of his plea, we must defer to its determination. (29)

 In VanNortrick, the appellant pleaded guilty; however, the trial court failed to
admonish the appellant regarding the immigration consequences of a guilty plea. (30) After
the court of criminal appeals stated that although there was strong evidence presented of
the appellant's guilt, it concluded that when a defendant is not a United States citizen, there
is no way to know whether the defendant would have changed his guilty plea had he known
he faced the possibility of deportation and being forever denied the opportunity of
becoming a naturalized citizen. (31) The court concluded that regardless of the strength of
the evidence of guilt, it had no "fair assurance that the appellant in that case would not
have changed his guilty plea had he been properly admonished." (32)

 Here, as in VanNortrick there is no way to know whether Villarreal would have
changed his guilty plea had he known he faced the possibility of deportation and being
forever denied the opportunity of becoming a naturalized citizen, and we cannot infer that
he would not have changed his plea. (33) Furthermore, Villarreal stated in his affidavit that
he would have changed his plea. Therefore, viewing the facts in the light most favorable
to the trial court's ruling, we conclude that the trial court did not abuse its discretion in
determining that the lack of the admonishment affected Villarreal's decision to plead guilty
and that his substantial rights were violated. (34) We overrule the State's first issue.

IV. Laches

 By its second issue, the State contends that the trial court abused its discretion in
granting habeas corpus relief to Villarreal because the "equitable doctrine of laches estops
[Villarreal's] claim." The State argues that it has been gravely prejudiced in its ability to
respond to Villarreal's allegations because the reporter's record is unattainable, (35) certain
court files are incomplete, portions of the original judgment are missing, and the State's
attorney who handled the case no longer works at the District Attorney's Office. The State
also argues that appellant was placed on notice in 1997 of the consequences of his guilty
plea when deferred adjudication became a conviction for purposes of immigration and that
he should have filed his writ then.

 The court of criminal appeals has held that the equitable doctrine of laches should
be employed in a determination of whether to grant habeas corpus relief. (36)

 The doctrine of laches is based upon the maxim that equity aids the vigilant
and not those who slumber on their rights. It is defined as neglect to assert
right or claim which, taken together with lapse of time and other
circumstances causing prejudice to an adverse party, operates as a bar in
a court of equity. Also, it is the neglect for an unreasonable and unexplained
length of time under circumstances permitting diligence, to do what in law,
should have been done.[ (37)]


To prevail on a theory of laches, the State must make a particularized showing of
prejudice. (38) "The type of prejudice the State must show is prejudice in its ability to 
respond to the allegations in the petition." (39)

 The State first argues that it was not able to respond to Villarreal's allegations due
to the passage of time. However, "[t]he doctrine of laches concerns prejudice, not mere
passage of time" (40) and "the length of delay alone will not constitute either
unreasonableness of delay or prejudice." (41) Therefore, the trial court did not abuse its
discretion in concluding that Villarreal's claim was not barred by laches due to the passage
of time.

 Next, the State argues that it was prejudiced because it was unable to obtain the
reporter's record of Villarreal's plea hearing. We disagree. To rely on the absence of the
reporter's record, the State must show that the substance of the record is unavailable from
other sources. (42) In this case, Judge Mancias, the judge who accepted Villarreal's guilty
plea, testified, and the State did not present any evidence that the prosecuting attorney or
the court reporter were unavailable to testify at the habeas corpus proceeding. (43) We
conclude that the State did not show that the substance of the record was unavailable from
other sources. Therefore, because the State did not make a particularized showing of
prejudice, the trial court did not abuse its discretion in finding that Villarreal's claim was not
barred due to laches. We overrule the State's second issue.

V. Direct Appeal

 By its third issue, the State generally contends that the trial court "improperly"
granted Villarreal's writ for habeas corpus because Villarreal should have raised his issue
on direct appeal. Specifically, the State argues, without citation to any appropriate
authority, that Villarreal "should have appealed directly, and not waited over seventeen
years to collaterally attack his plea."

 Although the State claims that a party may only attack a guilty plea due to the failure
to admonish pursuant to article 26.13 in a direct appeal, there is authority supporting a
conclusion that Villarreal could collaterally attack the judgment in the underlying case
through the habeas corpus process. In Ex parte Tovar, the court of criminal appeals
concluded that habeas corpus relief is available to an applicant that was not properly
admonished pursuant to article 26.13 if the applicant shows that no admonition was given
and that lack of an admonition affected his decision to plead guilty. (44) Notably, the court did
not state that the only avenue for attacking a judgment for noncompliance with article 26.13
is through a direct attack. Furthermore, in Robinson, the court of criminal appeals stated:

 A prior conviction may be held void on collateral attack if, inter alia, the
accused is convicted upon a plea of guilty without first waiving his right to jury
trial pursuant to Articles 1.13, 1.14 and 1.15, or his rights to appearance,
confrontation and cross-examination pursuant to Article 1.15, supra; the trial
court wholly fails to admonish the accused pursuant to Article 26.13(a),
supra, prior to receipt of his guilty plea, or otherwise fails to "substantially
comply," . . . with the statute . . . .[ (45)]


Therefore, we cannot conclude that Villarreal was required to raise his issue on direct
appeal. We overrule the State's third issue.

VI. Conclusion

 We affirm the trial court's judgment.



 LINDA REYNA YAÑEZ,

 Justice

Do not publish.

Tex. R. App. P. 47.2(b).

Delivered and filed the

23rd day of September, 2010.
1. See Tex. Health & Safety Code Ann. § 481.121(4) (Vernon 2010).
2. Villarreal did not file a brief in this case; thus, we are without the benefit of any argument on his
behalf.
3. See Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon Supp. 2009).
4. See Tex. Code Crim. Proc. Ann. art. 11.072, § 7(a) (Vernon 2005) (stating that "the court shall enter
a written order including findings of fact and conclusions of law").
5. Ex parte Garza, 192 S.W.3d 658, 660 (Tex. App.-Corpus Christi 2006, no pet.).
6. Ex parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995) (en banc).
7. Ex parte Tovar, 901 S.W.2d 484, 486 (Tex. Crim. App. 1994) (en banc).
8. Kniatt v. State, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).
9. Ex parte Garza, 192 S.W.3d at 661.
10. Id.
11. Tex. Code Crim. Proc. Ann. art. 26.13(a)(4); VanNortrick v. State, 227 S.W.3d 706, 707-08 (Tex.
Crim. App. 2007).
12. Tex. Code Crim. Proc. Ann. art. 26.13(c), (d); VanNortrick, 227 S.W.3d at 708.
13. VanNortrick, 227 S.W.3d at 708 (quoting Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App.
1997) (internal quotations omitted)).
14. Id.
15. Id.
16. Id.
17. Id. at 709 (quoting Anderson v. State, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006)).
18. Id. at 712.
19. Id. at 709.
20. Id. at 714.
21. We note that at the time Villarreal pleaded guilty, trial courts were required pursuant to article 26.13
to make the proper admonition regarding the immigration consequences of a guilty plea. See Act of June 14,
1985, 69th Leg., R.S., ch. 671, § 1, 1985 Tex. Gen. Laws 2443, 2444 (providing that the trial court shall
admonish a defendant pleading guilty of "the fact that if the defendant is not a citizen of the United States of
America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion
from admission to this country, or the denial of naturalization under federal law.").
22. See Tex. R. App. P. 33.1.
23. When asked if he agreed "that the law in 1991 was that deferred wasn't going to get you deported,"
Judge Mancias replied, "I think the law was that in 1991, deferred adjudication was not a conviction for
immigration purposes."
24. See Tex. R. App. P. 33.1(a)(1)(A); Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005) (en
banc) (concluding that because the appellant's trial objection did not comport with the issue raised on appeal,
he failed to preserve his complaint for appellate review); McNairy v. State, 835 S.W.2d 101, 107-08 (Tex.
Crim. App. 1991) (en banc) (concluding that the appellant did not preserve his issue for appellate review
because the claims presented did not comport with the arguments and objections made at pretrial); see also
VanNortrick, 227 S.W.3d at 712, 714 (rejecting the State's argument that the appellant was not harmed
because a prior felony conviction would have affected his immigration status, and therefore, "[t]he conviction
in the present case . . . would have had no impact on his immigration status, nor in turn, on his decision to
plead guilty").
25. See Tex. R. App. P. 33.1(a)(1)(A); Swain, 181 S.W.3d at 367. We note that the State relies on State
v. Jimenez to support its argument on appeal. See, 987 S.W.2d 886, 888-89 (Tex. Crim. App. 1999) (en
banc). However, in Jimenez, the court of criminal appeals "held that admonishments as to deportation
consequences must be given on felony offenses, but not on misdemeanors." Hatten v. State, 71 S.W.3d 332,
335 (Tex. Crim. App. 2002) (citing Jimenez, 987 S.W.2d at 886) (Johnson, J., concurring). Here, Villarreal
pleaded guilty to a felony, so the trial court was statutorily required to provide the proper admonitions. See
Tex. Code Crim. Proc. Ann. art. 26.13(a)(4).
26. See Ex parte Tovar, 901 S.W.2d at 486; see also VanNortrick, 227 S.W.3d at 714 (concluding that
the trial court's error in not admonishing the defendant of the immigration consequences of a guilty plea was
not harmless); Ex parte McCain, 67 S.W.3d 204, 209 n.14 (Tex. Crim. App. 2002) (citing Ex parte Tovar, 901
S.W.2d at 485, the court of criminal appeals noted that "failure to give mandatory admonishments regarding
deportation required under Art. 26.13(a)(4) is cognizable on writ of habeas corpus only if trial judge wholly
failed to give warnings and defendant's plea was constitutionally involuntary as a consequence"); Valdez v.
State, 82 S.W.3d 784, 787 (Tex. App.-Corpus Christi 2002, no pet.) ("A habeas corpus applicant seeking
relief from the failure to receive an admonishment concerning the immigration consequences must establish
there was no admonishment given consistent with article 26.13(a)(4) of the code of criminal procedure or
otherwise suggesting the possibility of deportation, and that the lack of such admonishment affected his
decision to enter a plea of no contest.") (citing Ex parte Tovar, 901 S.W.2d at 486).
27. See Fakeye v. State, 227 S.W.3d 714, 717 n.4 (Tex. Crim. App. 2007) ("A record that is completely
silent as to the consequences of a guilty plea supports the inference that the appellant was unaware of the
consequences.").
28. See id. ("However, if the record contains reference to the information the admonishment would have
provided, the record is not completely silent and may not support the inference that he was unaware of the
consequences.").
29. See Ex parte Harrington, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010) ("The trial judge is the
original factfinder in habeas corpus proceedings. Although this Court is the ultimate factfinder, 'in most
circumstances, we will defer to and accept a trial judge's findings of fact and conclusions of law when they
are supported by the record.' We similarly defer to any implied findings and conclusions supported by the
record.") (citations omitted).
30. VanNortrick, 227 S.W.3d at 708.
31. VanNortrick, 227 S.W.3d at 713 ("In this situation, the strength or weakness of the evidence against
the appellant makes little difference to the harm analysis in the context of the whole record.").
32. Id. We note that the court in VanNortrick conducted its harm analysis in the context of a direct
appeal. However, we conclude that the same reasoning applies equally in a habeas corpus proceeding. See
Ex parte Acosta, No. WR-69,780-01, 2008 Tex. Crim. App. Unpub. LEXIS 357, at **2-3 (Tex. Crim. App. May
14, 2008) (per curiam) (citing VanNortrick for the proposition that an applicant who had not been orally
admonished of the deportation consequences of his plea "alleged facts that, if true, might entitle him to relief").
33. See id. at 714 (explaining that the reasoning in Matchett v. State, 941 S.W.2d 922, 929 n.9 (Tex.
Crim. App. 1996) "still holds true" that if a defendant was in fact deportable, it would be impossible to
determine the effects of the trial court's error, and a presumption of harm would be almost irrebuttable); see
also Reed v. State, Nos. PD-0590-06 & PD-0591-06, 2007 Tex. Crim. App. Unpub. LEXIS 399, at *10 (Tex.
Crim. App. Oct. 10, 2007) (explaining that in VanNortrick, it "held that if the record did not show that the
defendant were a citizen of the United States, the failure to admonish him on the immigration consequences
of conviction could not be held harmless").
34. Ex parte Tovar, 901 S.W.2d at 486.
35. The State notes that there is a fifteen year retention requirement for reporter's records by the court
clerk. See Tex. R. App. P. 13.6 (providing that "the trial court clerk need not retain the [court reporter's] notes
beyond 15 years of their filing date").
36. Ex parte Carrio, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999) (approving the federal rules pertaining
to laches in assessing the consequences of delay in applications for writ of habeas corpus and adopting the
elements as set out by the Fifth Circuit that the State must prove to support a claim of laches) (citing Walters
v. Scott, 21 F.3d 683, 686-87 (5th Cir. 1994)).
37. Id. at 487 n.2 (internal quotations omitted).
38. Id. at 488.
39. Id.
40. Id. at 488 n.3.
41. Id. at 488.
42. Walters, 21 F.3d at 688 ("Assuming for the moment that the death of the court reporter and
unavailability of records is a possible source of prejudice to the state, we must hold that factor legally
insufficient because the state has not proved that it was actually prejudiced. If the state wishes to establish
prejudice from the death of the court reporter and the unavailability of the court reporter's records, it must also
establish that the substance of those records is unavailable from other sources."); McDonnell v. Estelle, 666
F.2d 246, 253 (5th Cir. 1982) ("Prejudice resulting from the judge's death occurs only if there are no other
sources from which the state can obtain the requisite information to counter the petitioner's claim."); see also
Ex parte Rodriguez, No. 2-07-079-CV, 2008 Tex. App. LEXIS 4602, at **9-12 (Tex. App.-Fort Worth June 19,
2008, pet. denied) (mem. op.) ("The State has not shown that the information regarding the admonishments,
presumably on the trial record, could not have been reproduced from other sources. Because the State has
not made a particularized showing of prejudice, and in the case of the judge's alleged memory problems that
Rodriguez's delay caused the prejudice, we reject its argument that habeas corpus relief is barred by laches
and move on to the merits of Rodriguez's appeal.").
43. We note that on appeal, the State asserts that the State's attorney who "handled the underlying
case is no longer with the District Attorney's Office"; however, it did not provide evidence to the trial court at
the habeas corpus proceeding supporting this assertion.
44. Ex parte Tovar, 901 S.W.2d at 486; see Ex parte McCain, 67 S.W.3d 204, 209 n.14 (Tex. Crim.
App. 2002) (noting that "failure to give mandatory admonishments regarding deportation required under Art.
26.13(a)(4) is cognizable on writ of habeas corpus only if trial judge wholly failed to give warnings and
defendant's plea was constitutionally involuntary as a consequence"); Valdez, 82 S.W.3d at 787 (citing Ex
parte Tovar, 901 S.W.2d at 486); see also Ex parte Gonzalez, Nos. WR-41,454-02, WR-41,454-03 &
WR-41,454-04, 2008 Tex. Crim. App. Unpub. LEXIS 786, at **2-3 (Tex. Crim. App. Oct. 29, 2008) (per
curiam) (concluding that the habeas corpus applicant who had not been warned of the immigration
consequences of a guilty plea should be allowed to present evidence supporting his claim to the trial court);
Ex parte Acosta, 2008 Tex. Crim. App. Unpub. LEXIS 687, at ** 2-3 (ordering the trial court to conduct a
habeas corpus hearing to determine whether the applicant would not have pleaded guilty if he had been aware
of the possibility of deportation after not being properly admonished pursuant to article 26.13).
45. Robinson v. State, 739 S.W.2d 795, 798 (Tex. Crim. App. 1987) (internal citations omitted)
(emphasis added).