**Eugene Robert VANNORTRICK,**
**Appellant**

v.

**The STATE of Texas.**

**Nos. PD–0923–06, PD–0924–06.**

Court of Criminal Appeals of Texas.

June 27, 2007.

---

John H. Hagler, Dallas, for Appellant.

Amy Sue Melo Murphy, Assistant District Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion for a unanimous Court.

We granted the State's Petition for Discretionary Review to determine two issues. Does a silent record on citizenship establish harm when the trial court failed to admonish the defendant regarding the deportation consequences of a guilty plea? Should an appellate court examine reasonable inferences of citizenship from other facts in the record when determining harm due to a failure to admonish regarding deportation?

The appellant was indicted on two counts of aggravated sexual assault of a child under the age of fourteen.[1] He pleaded guilty and elected to have a jury assess punishment.[2]

Article 26.13 of the Code of Criminal Procedure requires the trial court to admonish a defendant, prior to his plea of guilty or nolo contendere, about the range of punishment for the offense, potential effects of a plea-bargain agreement, and a sex-offender-registration requirement.[3] The court must also admonish the defendant of "the fact that if the defendant is not a citizen of the United States of Amer-

---

1. *See* PENAL CODE § 22.021(a).

2. *See* CODE CRIM. PROC. art. 37.07, § 2(b).

3. *See* CODE CRIM. PROC. art. 26.13(a)(1)-(3), (5).

ica, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." [4]

After jury voir dire and outside of the jury's presence, the court arraigned the appellant and admonished him orally of the range of punishment and the requirements associated with registering as a sex offender. The appellant was also admonished in writing of the sex-offender-registration requirement. The court, however, failed to admonish the appellant regarding the immigration consequences of a guilty plea to a non-U.S. citizen. The jury found the appellant guilty of and assessed punishment for the two offenses.

On appeal, the Fifth Court of Appeals reversed those judgments and remanded.[5] We granted review.

▪ A trial court's admonitions to and inquiries of a defendant prior to his plea of guilty serve to protect several constitutional rights.[6] They assure the court that the defendant's waiver of these rights in entering a guilty plea comports with due process, that is, the waiver was made voluntarily and with knowledge of the consequences of the plea. Article 26.13 is designed to provide these constitutional assurances.[7] The Article 26.13 admonitions, however, are not themselves constitutionally required.[8] Accordingly, this court has found, the failure to admonish a defendant

regarding the immigration consequences of his plea is non-constitutional error.[9]

For this particular error, the statute itself provides guidance: "In admonishing the defendant as herein provided, substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." [10]

▪ Reviewing courts look for "substantial compliance" with the statutory requirement. We have stated, "To claim that an admonishment was in substantial compliance even though it was never given is a legal fiction." [11] The record in this case clearly indicates the trial court altogether failed to admonish the appellant, either orally or in writing, on the deportation consequences of his plea. The trial court thereby in no way complied, even substantially, with the Article 26.13 admonitions requirement.

▪ This non-constitutional violation of Article 26.13 is subject to a harm analysis under Rule of Appellate Procedure 44.2(b), for those errors other than constitutional error.[12] "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." [13] If the error affected substantial rights, then, it is not harmless.

▪ In order to decide whether the trial court's error affected substantial

4. *Id.,* (a)(4).

5. *VanNortrick v. State,* 191 S.W.3d 490 (Tex. App.-Dallas 2006).

6. *See Anderson v. State,* 182 S.W.3d 914, 917–18 (Tex.Cr.App.2006).

7. *See Carranza v. State,* 980 S.W.2d 653, 656 (Tex.Cr.App.1998).

8. *Ibid.*

9. *Ibid.*

10. CODE CRIM. PROC. art. 26.13(c).

11. *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Cr. App.1997).

12. *Carranza,* 980 S.W.2d, at 656–57.

13. R.APP. PROC. 44.2(b).

rights, a reviewing court must conduct an independent examination of the record as a whole. There is no burden on either party to prove harm or harmlessness resulting from the error.[14] In *Burnett v. State*, we said reviewing courts were to conduct this analysis by looking for "indications that a defendant was or was not aware of the consequences of his plea and whether he was misled or harmed by the trial court's failure to admonish him." [15] More recently, in *Anderson*, we stated the critical question is, "[C]onsidering the record as a whole, do we have a fair assurance that the defendant's decision to plead guilty would not have changed had the court admonished him?" [16]

This court has established that when the record shows a defendant to be a United States citizen, the trial court's failure to admonish him on the immigration consequences of his guilty plea is harmless error. This is so because such a defendant is not subject to deportation, the threat of which could not have influenced that defendant's decision to plead guilty.[17]

This court has also found that when the record showed the defendant was not a citizen at the time of his guilty plea, the trial court's error in failing to give him the immigration admonition was not harmless.[18] We explained that the defendant "is clearly at a greater disadvantage if subject to deportation as a criminal depor-

tee rather than one who has an expired permit." [19] "We could not be assured that, aware of the greater disadvantage, the alien defendant would have pleaded guilty." [20]

But the harm analysis has changed since we last addressed a case of failing to admonish on deportation where the defendant's citizenship was unknown or in doubt. In *Morales v. State*, the record was silent as to the defendant's citizenship status.[21] In that case, the failure to admonish was reversible error not subject to a harm analysis.[22] We later decided, however, that "*Morales* was mistaken to the extent that it may have implied that the absence of substantial compliance ends the inquiry." [23] In *Matchett v. State*,[24] a plurality opinion, and in *Cain*, which adopted the holding and reasoning of *Matchett*, we clarified that no error, save for a narrow category of federal constitutional errors, is exempt from a harmless error analysis.[25] Rather than automatically precluding whole categories of error from consideration for a harm analysis, appellate courts should more appropriately determine whether, for any particular case, a meaningful harm analysis is possible.[26]

At the time of the *Matchett* and *Cain* decisions, courts conducted harm analyses under Rule of Appellate Procedure 81(b)(2), which was replaced in 1997 by Rule of Appellate Procedure 44.2, the cur-

---

14. *Anderson*, 182 S.W.3d, at 918, 919; *Burnett v. State*, 88 S.W.3d 633, 638 (Tex.Cr.App. 2002).

15. *Burnett*, 88 S.W.3d, at 638.

16. *Anderson*, 182 S.W.3d, at 919.

17. *Cain*, 947 S.W.2d, at 264.

18. *Carranza*, 980 S.W.2d, at 658.

19. *Ibid.*

20. *Anderson*, 182 S.W.3d, at 919.

21. 872 S.W.2d 753 (Tex.Cr.App.1994).

22. *Id.*, at 755.

23. *Cain*, 947 S.W.2d, at 264.

24. 941 S.W.2d 922 (Tex.Cr.App.1996).

25. *Matchett*, 941 S.W.2d, at 927–30; *Cain*, 947 S.W.2d, at 264.

26. *Ibid.*

rent rule governing harm assessments. Rule 81(b)(2) provided: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."[27] This corresponds to the current rule for constitutional error, Rule 44.2(a), but differs from Rule 44.2(b)'s "substantial rights" standard we now apply to cases like the one before us.

We now apply the foregoing principles to determine whether the Court of Appeals's decision was correct.

■ In its second ground for review, the State asks us to decide whether it is appropriate for appellate courts to draw reasonable inferences from the record about an appellant's citizenship and immigration status when determining harm from the trial court's failure to give the deportation admonition.

The record contains a penitentiary packet from the appellant's imprisonment resulting from a 1997 conviction in Michigan. On appeal, the State argued that this prior felony conviction would have rendered the appellant deportable under the United States Immigration Code, had he been a non-citizen. The fact that he was not removed from this country, but was instead free to move from Michigan to Texas, the State argued, strongly suggested that the appellant was a United States citizen, and therefore, the error was harmless.

The Court of Appeals rejected the State's argument that the record "strongly suggests" the appellant is a United States citizen.[28] The Court reasoned, "That could

equally suggest that, were he subject to deportation, he was not deported through error or oversight, or he was deported and later reentered the country."[29] The Court was also unwilling to assume, absent a finding by the immigration court in the record, that the prior conviction, on its own, proved the appellant's immigration status had been permanently changed.[30] The Court deemed the record to be "silent" as to both the appellant's citizenship and his immigration status.[31]

In this court, the State disputes what it perceives as the Court of Appeals's requirement of conclusive proof of citizenship or immigration status before making the "fair assurance" determination. The majority, the State contends, should have drawn reasonable inferences about the appellant's citizenship and immigration status, as two other courts of appeals have done, from the fact of the prior conviction. Had it done so, the Court would have found it had a fair assurance that the appellant's decision to plead guilty would not have changed had he been admonished. The trial court's error would therefore have been harmless.

■ We agree with the State that appellate courts should draw reasonable inferences from facts in the record when conducting a harm analysis due to a trial court's failure to admonish a defendant about the consequences of pleading guilty. And indeed, we already do. For instance, when the record is silent regarding the consequences of conviction in the context of a guilty plea, we infer that the defendant did not know the consequences of his

27.  *Cain*, 947 S.W.2d, at 264, n. 4.

28.  *VanNortrick*, 191 S.W.3d, at 492.

29.  *Ibid.*

30.  *Id.*, at 493.

31.  *Id.*, at 492, 493.

plea.[32]

We also agree with the State that, in some cases, the facts in the record will be sufficiently persuasive to merit an inference regarding citizenship or immigration status. We do not foreclose the possibility of a finding on citizenship in every case where conclusive proof is unavailable. However, although we find the record here-a pen packet documenting the appellant's prior conviction qualifying as a deportable felony conviction under federal law-is not entirely "silent" on the appellant's citizenship and immigration status, neither is it enough to support the inferences the State urges.

As the Court of Appeals has convincingly reasoned, the prior conviction suggests little about the appellant's citizenship or immigration status. Had he been a non-citizen at the time, his conviction might have rendered him deportable, but there is no guarantee that an error or oversight, as the Court of Appeals proposed, would not have left his immigration status unchanged. Nor is there any guarantee of deportation. Just as not everyone who is arrestable actually gets arrested, being deportable is not equivalent to being deported. There are simply too many possible scenarios by which a non-citizen who has been convicted of a deportable offense could have escaped the immigration consequences of his conviction. Drawing any sort of reasonable inference from the record before us is no more than mere supposition, which cannot support what the State suggests.

In its first ground for review, the State asks whether a silent record on citizenship establishes harm when the trial court fails to admonish a guilty-pleading defendant on the deportation consequences of his plea.

The Court of Appeals found the record to be "completely silent" on the issue of the appellant's citizenship. Faced with such a record, the Court could not establish whether the appellant was a citizen or non-citizen at the time of his plea, and consequently, was unable to determine whether the appellant's decision to plead guilty would have changed had he been given the admonition. Accordingly, the Court reasoned, under the standard of *Anderson,* it could not have a fair assurance that the defendant's decision to plead guilty would not have changed had the trial court admonished him.[33]

The Court rejected the dissent's position, a position the State has adopted before this court, that the prior felony conviction rendered the trial court's error harmless.[34] The dissent argued that if the appellant was not a citizen, the Michigan conviction had already permanently altered his immigration status because the crime was of a type as to subject him to deportation, make his naturalization impossible, and exclude him from admission to this country.[35] This status remained unchanged at the time of his guilty plea in the present case, the dissent asserted, and would not have been altered as a result of this second conviction.[36] Therefore, the dissent had a fair assurance that the appellant's decision to plead guilty would not have changed had he been admonished.[37]

The majority disagreed that the appellant's immigration status had necessarily been permanently altered by the Michigan

**32.** *Burnett,* 88 S.W.3d 633, at 638.

**33.** *VanNortrick,* 191 S.W.3d, at 492.

**34.** *Id.,* at 493.

**35.** *Id.,* at 495–98.

**36.** *Ibid.*

**37.** *Id.,* at 498.

conviction. The prior conviction, the Court said, merely rendered the appellant deportable. Being "deportable" as a result of a qualifying conviction is not correspondent with an official finding by the immigration court of a permanent change in immigration status. As with the silent record on citizenship, the silent record on the appellant's immigration status made it impossible for the Court to have a fair assurance that the defendant would not have changed his decision to plead guilty had he been admonished.[38]

In this court, the State argues a silent record on citizenship cannot establish harm in these cases and points to a split in authority among the courts of appeals. The State claims the Court of Appeals did have a fair assurance that the appellant would not have changed his plea had he been properly admonished, for two reasons. First, the State adopts the dissent's position that the appellant's prior conviction would have altered his immigration status permanently, had he not been a United States citizen. The conviction in the present case, then, would have had no impact on his immigration status, nor in turn, on his decision to plead guilty. Second, the State points to strong evidence of the appellant's guilt as an indication that the admonition would not have changed his decision to plead guilty.

We must decide whether the trial court's failure to admonish the appellant affected his substantial rights. In reviewing the record as a whole and addressing the State's claims, we find three issues of relevance to the "fair assurance" determination: whether the appellant knew the consequences of his plea, the strength of the evidence of the appellant's guilt, and the appellant's citizenship and immigration status.

First, as part of the "fair assurance" analysis, this court in *Anderson* examined the trial record for any indication that the defendant had already known the consequence of his plea-in that case, a sex-offender-registration requirement-at the relevant time, the time at which he entered the guilty plea.[39] The trial court's failure to provide the applicable admonition, the Court reasoned, would have far less impact on the defendant's decision to plead guilty if he were already aware of the particular consequence.[40] In that case, the Court found the testimony introduced by the appellant at punishment provided some evidence from which to infer that the appellant did know about the sex-offender-registration requirement.[41] "[T]o warrant a reversal on direct appeal, the record must support an inference that appellant *did not know* the consequences of his plea. . . . Of course, a silent record would support such an inference."[42] The record here shows that, not only did the trial court fail to give the admonition at issue, no one made any reference on the record to deportation or other potential immigration consequences of a guilty plea. And nothing in the record suggests that the appellant already knew about the potential consequences at the time he entered his plea. We may not infer that the appellant was aware of the consequences of his plea.

Second, *Anderson* directed reviewing courts to consider the strength of the evidence of guilt when determining the influence of the trial court's error on a defen-

38. *Id.,* at 493.

39. *Anderson,* 182 S.W.3d, at 920.

40. *Ibid.*

41. *Ibid.*

42. *Burnett,* 88 S.W.3d, at 638.

dant's decision to plead guilty.[43] In that case, the evidence of guilt was substantial, and there was no evidence to show the appellant was not guilty.[44] Examining the record as a whole, the Court found the strength of the evidence of guilt, added to the inference that the appellant knew the consequences of his guilty plea, gave the necessary assurance to find the error harmless.[45] In the present case, the evidence of guilt is strong. During her testimony at punishment, the victim detailed the appellant's abuse. The appellant himself had signed a handwritten, voluntary statement that, although it is inconsistent with the victim's testimony in that it identifies her as the instigator, clearly shows that the incident described by the victim took place.

What distinguishes the present case from *Anderson* is that, although strong evidence of guilt was present in both cases, here we may not infer the appellant knew about the immigration consequences of his plea. In this situation, the strength or weakness of the evidence against the appellant makes little difference to the harm analysis in the context of the whole record. We have already said that knowing about the immigration consequences of a guilty plea would have no impact on the citizen defendant. But suppose a non-citizen defendant were charged with an offense for which the evidence of guilt was compelling. Ignorant of the immigration consequences of his conviction, would he choose a guilty plea and certain conviction, hoping for some degree of leniency in punishment as a result? Would knowing that he faces the prospect of deportation and being forever denied the opportunity of becoming a naturalized citizen drive him to plead not guilty instead and take his chances in a trial on

his guilt? Ultimately, we have no way of knowing what role the knowledge would play in an individual defendant's decision about whether to plead guilty. Regardless of the strength of the evidence of guilt, we have no fair assurance that the appellant would not have changed his guilty plea had he been properly admonished.

Finally, we turn to the claims regarding the appellant's citizenship and immigration status. Although the record is not entirely silent on the appellant's citizenship and immigration status, for reasons discussed above, it is insufficient for a determination on either one.

Because we cannot know whether the appellant is a United States citizen, we agree with the Court of Appeals that it is impossible to determine with any certainty whether the appellant's decision to plead guilty would have changed had he been properly admonished. Accordingly, we cannot have a fair assurance that the appellant's decision to plead guilty would not have changed had he been admonished, and so, the error is not harmless.

Because we do not know if the appellant's immigration status was permanently altered with his first conviction in Michigan, we also agree with the Court of Appeals that we cannot know whether or how the admonition in the present case would have affected the appellant's decision to plead guilty. Was the appellant ever made aware of the immigration consequences of his Michigan conviction? And if not, would he have changed his plea in the present case had the trial court admonished him? Even if the appellant was fully aware of the consequences of his prior conviction, would he not be reasonable to believe that, having gone this long without being deported, he would likely

43. *Anderson,* 182 S.W.3d, at 920.

44. *Id.,* at 920–21.

45. *Ibid.*

never have been deported for that conviction? And that the conviction in the present case presented a renewed risk to his status? All we can do is speculate about whether the appellant would have changed his mind about his guilty plea had he been admonished. In the face of such doubt, we have no fair assurance that the appellant would not have changed his decision to plead guilty had the trial court admonished him, and so, the error is not harmless.

We find that we have no fair assurance that the appellant's substantial rights were not affected by the trial court's error. In so finding, we hold that, when the trial court fails to admonish a defendant about the immigration consequences of his guilty plea, a silent record on citizenship, or a record such as here that is insufficient to determine citizenship, establishes harm by the standard of Rule 44.2(b).

The decision we reach today is consistent with our prior case law. In *Matchett,* we remarked: "[I]f as in Morales, the appellant's status were unknown, or if he were in fact deportable, it would be impossible to determine the effects of the trial court's error, and the presumption of harm would be almost irrebuttable." [46] And later, in Cain, we said, "Of course, where the error involved defies analysis by harmless error standards or the data is insufficient to conduct a meaningful harmless error analysis, then the error will not be proven harmless beyond a reasonable doubt under Rule 81(b)(2)." [47] Although the harmless error rule has changed, the reasoning still holds true.

We affirm the judgment of the Court of Appeals.

---

**46.** *Matchett,* 941 S.W.2d, at 929, n. 9.

**47.** *Cain,* 947 S.W.2d, at 264.