IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00163-CR

 

Joseph Horvath,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 40th District
Court

Ellis County, Texas

Trial Court No. 31,157CR

 



MEMORANDUM  Opinion



 

A jury found Joseph Horvath guilty of capital murder in
the death of his seven-week-old son Alexzander, and he automatically received a
life sentence.  Horvath argues in two issues that the trial court erred in
overruling his motion for directed verdict on the ground that the evidence is
legally and factually insufficient to show that Horvath intentionally or
knowingly caused his child’s death.  We will affirm.

            At Alexzander’s birth, Child
Protective Services (CPS) took custody of him because CPS already had removed
his mother’s other children.  A few weeks later, after a court hearing,
22-year-old Horvath obtained custody of Alexzander.  Horvath and Alexzander’s
mother were not married and did not live together.  Horvath lived in an
apartment with two other men and was Alexzander’s sole caregiver.  Horvath’s
parents were also given custody of Alexzander, but he lived exclusively with
Horvath, who placed him in day care while Horvath worked.

            Around 11:00 p.m. on June
27, 2006, Horvath called 9-1-1 to report that something was wrong with Alexzander,
advising that he had gone limp and was having trouble breathing.  When paramedics
arrived, Alexzander was pale blue and motionless.  He did not have a pulse and had
bloody mucus coming from his nose.  Horvath told the paramedics that he was the
baby’s father and stated that he had found him in that condition when he went
to wake him to feed him.  The paramedics took Alexzander to the hospital, where
resuscitation efforts failed after an hour-and-a-half.

            At the hospital, Horvath
spoke to several hospital employees.  They and the paramedics testified that Horvath’s
emotionless demeanor was unusual.  The treating physician, Dr. Craig Yetter,
said that the blood coming from Alexzander’s nose and the swelling around his
right eye, coupled with Horvath’s emotionless demeanor and lack of grieving,
caused him to suspect abuse.

            The following day, Horvath
spoke with Detective John Erisman about Alexzander’s death.  The interview was
videotaped and was shown at trial.  During the interview, Horvath gave several versions
of the events leading up to Alexzander’s death.  Horvath ultimately admitted
that he shook Alexzander and caused his death.  A CPS investigator also
interviewed Horvath, who she said had a smirk, displayed no emotion, and had an
eerie demeanor.

            The medical examiner who
performed the autopsy on Alexzander found at least two different episodes of
brain trauma, with one occurring earlier than the one that caused his death. 
He testified at trial that the cause of Alexzander’s death was blunt force injuries
to the brain that were severe, inflicted, and intentional.

            Horvath testified, saying
that his shaking Alexzander caused his death but that he did not intentionally
or knowingly cause his death.  He admitted that he knew that shaking a baby was
dangerous and could cause death, but he shook Alexzander anyway.

            The jury was charged on
capital murder, murder, manslaughter, and criminally negligent homicide. 
Horvath was found guilty of capital murder.

When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In doing so, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In a factual sufficiency review, we ask
whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder’s verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
“The court reviews the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compares it with the evidence
that tends to disprove that fact.”  Johnson, 23 S.W.3d at 7.  The
appellate court “does not indulge in inferences or confine its view to evidence
favoring one side of the case.  Rather, it looks at all the evidence on both
sides and then makes a predominantly intuitive judgment. . . .”  Id. (quoting William Powers and Jack Ratliff, Another Look at “No Evidence” and
“Insufficient Evidence,” 69 Texas L. Rev. 515, 519 (1991)).  The nature
of a factual sufficiency review authorizes an appellate court, although to a
very limited degree, to act as the so-called “thirteenth juror” to review the
factfinder’s weighing of the evidence and disagree with the factfinder’s
determination.  Watson, 204 S.W.3d at 416-17.

For the State to prove that Horvath committed
capital murder, it was required to prove that he intentionally or knowingly
caused Alexzander’s death.  See Tex.
Pen. Code Ann. § 19.02(b)(1) (Vernon 2003), § 19.03(a)(8) (Vernon Supp. 2008).  Proof of a culpable mental state almost invariably depends upon
circumstantial evidence.  Montgomery v. State, 198 S.W.3d 67, 87 (Tex.
App.—Fort Worth 2006, pet. ref'd); Morales v. State, 828 S.W.2d 261, 263
(Tex. App.—Amarillo 1992), aff'd, 853 S.W.2d 583 (Tex. Crim. App.
1993).  A person acts “knowingly,” or with knowledge, with respect to a result
of his conduct when he is aware that his conduct is reasonably certain to cause
the result.  Tex. Pen. Code Ann.
§ 6.03(b) (Vernon 2003).  Intent can be inferred from the extent of the
injuries to the victim, the method used to produce the injuries, and the
relative size and strength of the parties.  Patrick v. State, 906 S.W.2d
481, 487 (Tex. Crim. App. 1995).  In a murder case, a culpable mental state can
be inferred from the acts, words, and conduct of the accused.  Id.

            Horvath testified that he
had bought and put together a changing table.  A few days before Alexzander’s
death, while he was changing a diaper, he pushed down on the table, causing it
to partially collapse and Alexzander to slide through the end headfirst and
strike a filing cabinet.  A State’s expert bought a replica changing table to
try to duplicate Horvath’s explanation of how the table broke but was unable to
do so.  The State’s theory was that Horvath, frustrated with Alexzander’s nighttime
crying and not sleeping for more than three hours at a time, hit the table with
extreme force out of frustration, causing it to break.

            Horvath admitted that Alexzander’s
nighttime crying and not sleeping frustrated him and that he would either punch
pillows or go outside to smoke a cigarette to relieve his frustration.  He also
admitted that he had told Detective Erisman that Alexzander was “bankrupting”
him and that he told different stories to Erisman about what had happened to
Alexzander.

Viewing the evidence in the light most
favorable to the verdict, we find that a rational trier of fact could have
found beyond a reasonable doubt that Horvath intentionally or knowingly caused Alexzander’s
death.  Other than Horvath’s denial of intent, there was no other controverting
evidence, and the jury was free to disbelieve Horvath.  Horvath testified on
cross-examination:

Q.        You knew shaking a baby was
dangerous and could cause their death?

A.        Yes.

Q.        Yet you shook Alexzander
anyhow?

A.        Yes.

Considering all of the evidence in a
neutral light, we find that the evidence is factually sufficient.  The proof of
guilt is not so weak nor the conflicting evidence so strong as to render the jury’s
verdict clearly wrong and manifestly unjust. 








Because the evidence is legally and
factually sufficient, the trial court did not err in overruling Horvath’s
motion for directed verdict.  We overrule Horvath’s two issues and affirm the
trial court’s judgment.

 

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed February 25, 2009

Do
not publish

[CRPM]

 






y Code Sections 51.09 and 54.03.  We reverse
and remand this cause to the trial court for a new trial.  Because we are
remanding this cause for a new trial, we do not address S.G.’s other issues.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Reversed and Remanded

Opinion delivered and
filed October 14, 2009

[CV06]









[1]
The criminal standard for nonconstitutional error is: “Any other error, defect,
irregularity, or variance that does not affect substantial rights must be
disregarded."  Tex. R. App. P.
44.2(b).  If the error affects substantial rights, then, it is not harmless.  VanNortrick
v. State, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007).