

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00267-CR
_____

RENAULDO SMITH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 40304-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Pursuant to an open plea of guilty, Renauldo Smith was convicted of aggravated robbery and was sentenced to twelve years' imprisonment. Smith's point of error on appeal complains that his plea was involuntarily and unknowingly entered because the judge stated he would consider "probation"[1] as a sentencing option for this offense, even though deferred adjudication community supervision was the only probation option available for consideration by the trial judge.[2] We affirm the judgment of the trial court because we find that Smith's plea was knowingly and voluntarily entered.

## I.     Background

Smith was charged with one count of aggravated robbery and another count of robbery. He sought a jury trial and filed an "application for probation" in order to allow the jury to consider probation as a sentencing option. However, on the day of jury selection, the parties "reached a plea agreement that the State would drop the robbery charge . . . , leaving only the aggravated-robbery-with-a-deadly-weapon charge . . . , and Smith would drop his jury demand and enter an 'open' plea of guilty before the court." An agreement regarding punishment was not reached. Smith requested probation on the plea agreement form.

The trial judge began the plea proceedings by stating, "[b]efore I can receive your guilty plea, I need to ask you a series of questions." The trial judge informed Smith that there was a

[1]The Legislature has used "community supervision" since 1993, but the parties and the trial court in this matter have used "probation." For consistency, "probation" will be used in this opinion. "'Probation' and 'community supervision' are interchangeable terms." *Garrett v. State*, __ S.W.3d __, 2012 Tex. Crim. App. LEXIS 820 (Tex. Crim. App. June 20, 2012); *Ivey v. State*, 277 S.W.3d 43, 51 n.48 (Tex. Crim. App. 2009).

[2]*See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g (West Supp. 2012).

"jury panel out in the hall," and affirmed Smith's desire to waive his right to trial by jury. In the following portion of the transcript, the judge inquired into the knowing and voluntary nature of the plea:

THE COURT: Now, I have before me several papers you have signed; is that correct?

[Defendant]: Yes, sir.

THE COURT: These papers are very important. They tell me that you wish to plead guilty to aggravated robbery. They also tell me that you understand by pleading guilty that you're giving up very—many important rights that you have in this case. Did you understand that?

[Defendant]: Yes, sir.

THE COURT: And before you signed these papers did you sit down with your lawyer, Mr. Gerald Smith, and did he go over all these papers with you?

[Defendant]: Yes, sir.

THE COURT: Did he explain them to you?

[Defendant]: Yes, sir.

THE COURT: And did you understand everything you signed?

[Defendant]: Yes, sir . . . .

THE COURT: Is anybody making you plead guilty to aggravated robbery?

[Defendant]: I made the decision.

THE COURT: Are you guilty of aggravated robbery under Paragraph A?

[Defendant]: Yes, sir.

Thereafter, the following exchange occurred:

THE COURT: Do you understand what you're doing in court here today?

3

[Defendant]:   Yes, sir.

THE COURT:   Just use your own words and tell me what you're doing in court here today.

[Defendant]:  I'm actually trying to get probation on—

THE COURT:   Well, let me ask you this, what are you charged with?

[Defendant]:  Aggravated robbery.

THE COURT:   How are you pleading to that charge?

[Defendant]:  Guilty.

. . . .

THE COURT:   Now, Mr. Renauldo Smith, this case comes to me under what we call an open plea.  Did you understand that?

[Defendant]:  Yes, sir.

THE COURT:   That means there's no plea bargain; there's no plea agreement. Did you understand that?

[Defendant]:  Yes, sir.

THE COURT:   By agreement of the parties, after we take the guilty plea today, we're going to recess at a later date for final sentencing.  Did you understand that?

[Defendant]:  Yes, sir.

THE COURT:   And at the final sentencing I will hear evidence, and I will make the decision what your punishment is going to be.  Did you understand that?

[Defendant]:  Yes, sir.

. . . .

4

THE COURT:     So as the Judge I will make the decision. The range of punishment for aggravated robbery, it is a first degree felony.  Did you understand that?

[Defendant]:  Yes, sir.

THE COURT:     On the low end of the punishment spectrum is 5 years in prison. Did you understand that?

[Defendant]:  Yes, sir.

THE COURT:     And on the high end of the punishment spectrum is 99 years or life in prison.  Did you understand that?

[Defendant]:   Yes, sir.

THE COURT:     Of course, 5 years on the low end and anywhere in between 5 years and 99 years or life is the  range of punishment.  Did you understand?

[Defendant]:  Yes, sir.

. . . .

THE COURT:    You have made a request for probation; is that correct?

[Defendant]:  Yes, sir.

THE COURT:     I certainly would consider your request for probation, but I don't have to grant you probation.  Do you understand that?

[Defendant]:  Yes, sir.

THE COURT:     I would listen to all the evidence.  We're going to have a pre-sentence done; I would read that.  I would listen to any witnesses you brought.  You could testify, you wouldn't have to, but if you wish to I would certainly listen to what you had to say.
I would listen to what the State's evidence was.  And at the end of the sentencing phase of the trial I would make the decision and set your punishment within the range of punishment provided by law. Did you understand?

[Defendant]:  Yes, sir.

5

THE COURT: Now, I don't know what I'm going to do, but in the event you receive a prison sentence you do understand that there are implications because of this offense as to how much time you would spend in prison. Did you understand?

[Defendant]: Can you explain that?

THE COURT: All right. This is aggravated robbery. It's what we call a 3g offense. There is an allegation that a deadly weapon was used or exhibited. Did you understand that?

[Defendant]: Yes, sir.

THE COURT: I don't know what I would do, but if I impose a prison sentence, just by example a 10-year prison sentence, just as an example, then under our law you would have to serve half that time before you're eligible for parole. Did you understand that?

[Defendant]: Yes, sir.

THE COURT: That's the significance of this kind of offense if you were to receive prison time. Did you understand that?

[Defendant]: Yes, sir.

Following the exchange, the judge received the guilty plea, finding that it was "freely and voluntarily" made. In his address dismissing the jury, the trial judge stated,

> This is a first degree felony. On the low end it can be 5 years in prison; on the high end it could be up to life in prison. The defendant had also requested probation. He is eligible for probation, doesn't mean that he'll get it, but he's making that request. And at the final sentencing the parties have agreed that I will make that decision.

Although he received Smith's plea, the trial judge did not make a finding of guilt.

On the day of the sentencing hearing, Smith signed a written plea admonishment, further explaining the range of punishment and the availability only of "deferred adjudication." At the sentencing hearing, defense counsel repeatedly requested probation. Smith, his mother, and his

6

wife testified and asked the judge to sentence Smith to probation. At the conclusion of the sentencing hearing, the trial court found Smith guilty of aggravated robbery "[b]ased upon your plea and based upon the evidence," and sentenced Smith to twelve years' imprisonment.

On appeal, Smith argues that the trial judge did not properly admonish him regarding the range of punishment for the offense of aggravated robbery because the judge voluntarily indicated he would consider probation, whereas Section 3g of Article 42.12 specifically prohibits a judge from giving probation to someone convicted of aggravated robbery. Smith further argues that since he was misled to believe that probation was a possibility, his guilty plea was involuntarily induced.[3]

The State contends that the trial judge substantially complied with the provisions of Article 26.13 because deferred adjudication probation was available to Smith. Further, the State asserts that Smith failed to affirmatively show that he was not aware of the consequences of his plea or that he was misled or harmed by the admonishment.

## II.    Rules for Review of Smith's Plea

In determining the voluntariness of a plea, we consider the totality of the circumstances, viewed in light of the entire record. *Griffin v. State*, 703 S.W.2d 193, 196 (Tex. Crim. App. 1986); *Ybarra v. State*, 93 S.W.3d 922, 925 (Tex. App.—Corpus Christi 2002, no pet.); *Lopez v. State*, 25 S.W.3d 926, 928 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). "Before accepting a plea of guilty . . . , the trial court shall admonish the defendant of:  (1) the range of punishment attached to the offense."

---

[3]Smith does not argue that he would have pleaded "not guilty" if he had known probation was a possibility only under the deferred adjudication statute.

7

TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1) (West Supp. 2012). "In admonishing the defendant . . . , substantial compliance by the court is sufficient, unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed by the admonishment of the court." TEX. CODE CRIM. PROC. ANN. art. 26.13(c) (West Supp. 2012); *see VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007); *Seagraves v. State*, 342 S.W.3d 176, 183 (Tex. App.—Texarkana 2011, no pet.). The court may make the admonitions either orally or in writing. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(d) (West Supp. 2012). If the court gives the written admonitions, the court "must receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea." *Id.*

There is a presumption of regularity of the judgment and the proceedings. *Lopez*, 25 S.W.3d at 928. Thus, if the record reflects that Smith was properly admonished, it presents a prima facie showing that the guilty plea was made knowingly and voluntarily. *Martinez*, 981 S.W.2d at 197. Faced with this prima facie showing, the burden then shifts to the defendant. *Id.* "Once a defendant has pled guilty and attested to the voluntary nature of his plea, he bears a heavy burden at a subsequent hearing to demonstrate a lack of voluntariness." *Ybarra*, 93 S.W.3d at 925.

Before accepting a plea of guilty, a trial court has an affirmative duty to admonish a defendant on the "range of punishment attached to the offense." TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1); *see Pena v. State*, 132 S.W.3d 663, 665 (Tex. App.—Corpus Christi 2004, no pet.); *Tabora v. State*, 14 S.W.3d 332, 334 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

8

However, the Texas Court of Criminal Appeals "has 'long held' that the 'range of punishment' that must be included in an admonishment under Article 26.13(a)(1) . . . does not include" probation. *Ex parte Williams*, 704 S.W.2d 773, 775 (Tex. Crim. App. 1986); *see Pena*, 132 S.W.3d at 665; *Tabora*, 14 S.W.3d at 334. Thus, the general rule is that there is no mandatory duty for the trial court to admonish a defendant as to his or her eligibility for probation. *Williams*, 704 S.W.2d at 775; *see Harrison v. State*, 688 S.W.2d 497, 499 (Tex. Crim. App. 1985); *Pena*, 132 S.W.3d at 665.

However, if a court provides information about probation by its own volition, the information provided must be accurate. *Williams*, 704 S.W.2d at 776; *Richard v. State*, 788 S.W.2d 917, 919 (Tex. App.—Houston [1st Dist.] 1990, no pet.). This is because a guilty plea is involuntarily induced if it is shown that: (1) the trial court volunteered an admonishment that included information on the availability of probation, thereby creating an affirmative duty to provide accurate information on the availability of probation; (2) the trial court provided inaccurate information on the availability of probation, thereby leaving the defendant unaware of the consequences of the guilty plea; and (3) the defendant made an objective showing of being misled or harmed by the inaccurate admonishment. *Williams*, 704 S.W.2d at 776–77; *Tabora*, 14 S.W.3d at 334.

## III. Smith Cannot Demonstrate that His Plea Was Involuntary

Here, the trial court properly admonished Smith with respect to the range of punishment under Article 26.13 by reminding Smith that the "low end" of the punishment was five years' incarceration and the "high end" was "99 years or life in prison." Written admonishments

9

further describing the range of punishment were signed by Smith. We find this sufficient to present a prima facie showing that the guilty plea was made knowingly and voluntarily in accordance with Article 26.13. *Martinez*, 981 S.W.2d at 197.

Smith now bears the burden of lack of voluntariness. He seeks to fulfill his burden by complaining that he relied on probation being an available remedy in advancing his plea. He points to the testimony presented during the sentencing hearing related to probation, as evidence of his reliance.

First, Smith must show that the trial court "volunteered an admonishment that included information on the availability of" probation. *Williams*, 704 S.W.2d at 776. The trial judge told Smith that he would consider probation as a possible range of punishment. The initial *Williams* requirement was met.

Next, Smith must show that "the trial court provided him with inaccurate information on the availability of" probation, "thereby leaving [him] unaware of the consequences of his plea." *Id.* at 776–77. Smith was only eligible for deferred adjudication probation. The record establishes that the judge deferred a determination of guilt until after hearing the punishment evidence and receiving the presentence investigation report. Smith was specifically admonished in writing as to the availability of deferred adjudication probation. After the trial judge received the plea of guilty, it had the authority to defer adjudication of guilt and place Smith on probation. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5 (West Supp. 2012). This is a method for obtaining what is generally known as one form of probation. The judge may impose all conditions that are imposed on those on "regular" probation. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(a)

10

(West Supp. 2012). Sometime after the guilty plea, the trial court heard evidence with respect to the possibility of deferred adjudication probation, but it was denied after the court found Smith's testimony incredible.[4] The trial court did not adjudicate Smith as "guilty" until he had heard all of the evidence at the punishment hearing and the final arguments of counsel. Given these facts, the court's admonishment that it would consider probation cannot be said to be inaccurate or such that Smith was unaware of the consequences of his plea, since the court did, as promised, consider the imposition of probation. *See Williams*, 704 S.W.2d at 776–77. While we stress the importance of proper labeling of the different forms of probation, we find no error in this case.

After reviewing the totality of the circumstances in this case, we conclude that Smith has failed to show that his plea was involuntary or unknowing.

## IV.     Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     August 13, 2012
Date Decided:       August 14, 2012

Do Not Publish

---

[4]At the sentencing hearing, Smith and several witnesses on his behalf testified that he would abide by any term of probation imposed, obtain employment, and act as a law-abiding citizen. Counsel for Smith vigorously implored the trial court to impose probation. The State opposed probation.

11