**Opinion issued July 31, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00438-CR

———————————

**VITH LOCH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1463146**

---

## MEMORANDUM OPINION

After appellant, Vith Loch, without an agreed punishment recommendation from the State, pleaded guilty to the offense of murder,[1] a jury found him guilty of murder and assessed his punishment at confinement for life and a $10,000.00 fine.

---

[1]    *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011).

In three issues, appellant contends that the trial court erred in not admonishing him of the potential immigration consequences of his guilty plea, the trial court erred in not making certain findings before accepting his guilty plea,[2] and, as a result, he entered his guilty plea involuntarily. In its sole cross-point, the State requests reformation of clerical errors in the judgment.

We reverse and remand.

## Background

At his arraignment, the trial court advised appellant as to the range of punishment for the offense of murder, but it did not provide any further admonitions. Appellant testified that he discussed his case at length with his trial counsel, including all potential defensive theories and strategies. However, despite his trial counsel's presentation of various possible defensive strategies, appellant chose to plead guilty to committing the 2004 murder of Soeuth Nay, the "complainant," and for a jury to assess his punishment.

During the trial on the issue of punishment, Tavey Mao, the complainant's cousin, testified that he saw appellant threaten the complainant with a firearm near the time of his murder.

N.M. testified that she thought highly of the complainant and that her family had hoped she would marry him when she was older. However, she feared

---

[2] See TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2017).

appellant, explaining that when she was twelve years old, he kissed her against her will while she babysat his son. And after the complainant's disappearance in 2004, when N.M. was fourteen years old, appellant called to tell her that the complainant "was gone." Shortly thereafter, N.M. ran into appellant. He offered to buy her a soft drink, and she got into his car because she was afraid to refuse his offer. Appellant then drove her to a motel where he sexually assaulted her.

N.H., appellant's former "girlfriend" and the mother of two of his children, testified that they began a "relationship" when she was fifteen years old and he was much older. During their on-and-off relationship, which lasted for six or seven years, he was violent towards her and would point a firearm at her when he was angry. Appellant even fired a shot at her one time while she was pregnant. In 2004, on the night of the complainant's murder, appellant insisted that N.H. go to work even though she was not scheduled to do so. Later that evening, when she telephoned him after her shift for a ride home, he did not answer, despite attempting to reach him numerous times. N.H. took a cab home and discovered that appellant had left their two young children home alone. When he arrived home later that night, he went straight to the bathroom to wash his hands and clothing. N.H. explained that she and her children subsequently fled with appellant to live with his mother in Alvin, Texas. Less than a month later, appellant moved to Florida. He later admitted to N.H. that he had shot and killed the complainant.

3

M.S., who had been in a "relationship" with appellant before N.H., and is the mother of two of his children, testified that she met appellant when she was thirteen years old and he was approximately twenty-three years old. She explained that he was violent. Appellant knocked her unconscious around the time she returned home from the hospital after giving birth to their second son. After they broke up, appellant showed up at her home late one night in 2004. He was nervous and told M.S. that law enforcement officers were looking for him. Appellant asked to stay with her, but she refused. Two years later, he admitted to M.S. during a telephone call that he had killed the complainant.

The trial court admitted into evidence a stipulation in which appellant stated that he had been previously convicted of six additional felonies: three in Texas and three in Florida. The trial court also admitted into evidence a statement made by appellant to law enforcement officers at the time of his arrest. In that statement, he admitted to having killed the complainant.

## Plea Admonitions

In his first issue, appellant argues that the trial court erred in not admonishing him of the immigration consequences of his guilty plea. Although the State concedes that the trial court so erred, it asserts that the error was harmless.

To ensure that trial courts enter and accept only constitutionally valid pleas and to assist trial courts in making the determination that a defendant's relinquishment of rights is made knowingly and voluntarily, Texas law requires that trial courts make certain admonishments to defendants before accepting a plea of guilty. TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp. 2017). And a trial court is explicitly required to admonish the defendant of, among other things, the fact "that if [he] is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." *Id.* art. 26.13(a)(4).

Here, the record demonstrates, and the State concedes, that the trial court did not admonish appellant of the immigration consequences of his guilty plea. Therefore, the trial court committed error. *See VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007). However, because the error is non-constitutional, if it did not affect appellant's substantial rights, we must hold it to be harmless. *See* TEX. R. APP. P. 44.2(b).

In order to determine whether appellant's substantial rights were affected, we must review the entire record. *Anderson v. State*, 182 S.W.3d 914, 918–19 (Tex. Crim. App. 2006). There is no burden on either party to prove harm or harmlessness resulting from the error. *VanNortrick*, 227 S.W.3d at 709. While we

5

may draw reasonable inferences from the record, we may not use mere supposition. *Id.* at 710–11. In order to determine whether the error was harmless, we must decide whether we have fair assurance that appellant's decision to plead guilty would not have changed had the trial court properly admonished him of the potential immigration consequences of his guilty plea. *Id.* at 709. In conducting this review, we focus on three issues: (1) whether appellant knew the consequences of his plea, (2) the strength of the evidence of his guilt, and (3) his citizenship and immigration status. *Id.* at 712–13.

First, we consider whether appellant was aware of the deportation consequences of his guilty plea. *VanNortrick*, 227 S.W.3d at 712; *see also Gutierrez-Gomez v. State*, 321 S.W.3d 679, 683–84 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding error in not admonishing defendant of immigration consequences harmless where issue referenced five times during voir dire). In this case, the record demonstrates that the trial court did not admonish appellant of any deportation consequences of his guilty plea, and no one made any reference on the record to deportation or other potential immigration consequences that might result from his guilty plea. "[W]hen the record is silent regarding the consequences of conviction in the context of a guilty plea, we infer that the defendant did not know the consequences of his plea." *VanNortrick*, 227 S.W.3d at 710–11.

The State argues that appellant must have been aware of the immigration consequences of his guilty plea because he would have presumably been admonished when pleading guilty in any one of his six prior felony cases in Texas and Florida.[3] It further notes that a Texas "pen packet" for one of his prior convictions states "possible DETN from USI for Immigration Violation." However, there is no evidence in the record that establishes that appellant actually received an admonishment in any of those cases or was otherwise made aware of the immigration consequences of his plea. *See VanNortrick*, 227 S.W.3d at 711 (holding "pen packet documenting [defendant]'s prior conviction qualifying as a deportable felony conviction" insufficient to support inference defendant non-citizen). And we note that the records in the cases relied upon by the State in support of its position contain direct references to the immigration consequences of pleading guilty, supporting the inference that those defendants had knowledge of the consequences of their pleas. *See Rodriguez v. State*, 425 S.W.3d 655, 665–67 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding harmless error in not admonishing defendant who had twice been previously deported after pleading guilty, admitted discussing consequences of plea with attorney, and discussed marrying citizen with prior counsel to stay in country); *Gutierrez-Gomez*, 321 S.W.3d at 683–84 (holding trial judge's statement, during voir dire, defendant

---

[3]    The State asserts that, at the time, Florida law required a similar admonition.

likely automatically deported if released on community supervision, along with references to deportation by defense counsel and prospective juror, supported inference defendant knew consequences of plea). Conversely, in this case, "[d]rawing any sort of reasonable inference from the record before us is no more than mere supposition, which cannot support what the State suggests." *VanNortrick*, 227 S.W.3d at 711.

Next, we consider the strength of the evidence of appellant's guilt. This evidence unquestionably favors the State. Both N.H. and M.S. testified that appellant admitted to them that he had killed the complainant. N.M. also testified that after the complainant's disappearance, appellant telephoned her and told her that the complainant "was gone." Additionally, Tavey Mao testified that he saw appellant threaten the complainant with a firearm around the time of his disappearance.

However, the Texas Court of Criminal Appeals has made it clear that where we cannot infer that appellant knew about the immigration consequences of his plea, "the strength or weakness of the evidence against [him] makes little difference to the harm analysis in the context of the whole record." *Id.* at 713. This is because we cannot be certain that, even if the evidence of guilt against him is strong, appellant would necessarily have chosen to enter a guilty plea and accept conviction over taking his chances at trial knowing that is the only way he could

have attempted to avoid deportation or being forever denied the opportunity to become a naturalized citizen. *Id.*

Finally, it is undisputed in this case that appellant is not a United States citizen.

Although the evidence of appellant's guilt is strong, there is no evidence in the record from which we can infer that he had knowledge of the immigration consequences of his guilty plea. Thus, we cannot have fair assurance that his decision to plead guilty would not have changed had the trial court admonished him of the possible deportation consequences of his guilty plea. Accordingly, we hold that the trial court's error in not admonishing appellant of the immigration consequences of his guilty plea was not harmless.

We sustain appellant's first issue. Because we sustain appellant's first issue, we need not reach his second or third issues. We also need not address the State's cross-point requesting modification of the judgment for clerical errors.

## Conclusion

We reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).