

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00135-CR

VICTOR HUGO TORRES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2229242

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Chief Justice Stevens

# O P I N I O N

Victor Hugo Torres appeals his conviction for the third-degree-felony offense of possession of one or more grams but less than four grams of methamphetamine.[1] Torres pled guilty to that charge and true to two punishment enhancement allegations.[2] The trial court sentenced Torres to twenty-five years' imprisonment. On appeal, Torres claims the trial court erred when it failed to admonish him of the deportation consequences of his conviction and when it assessed restitution of $180.00 payable to the Texas Department of Public Safety (DPS) Crime Laboratory. We find no reversible error, though we will delete the restitution assessment. As modified, we affirm the trial court's judgment.

## I. Background

Torres was scheduled for a jury trial on September 26, 2022. Instead, Torres waived his right to a jury trial and pled guilty to the indictment, without a plea recommendation from the State. Torres also pled true to two prior felony convictions from Idaho alleged for sentencing enhancement: aggravated battery (for which he was sentenced to five years' incarceration) and trafficking of methamphetamine (for which he was sentenced to twenty years' incarceration).[3] The trial court admonished Torres that he faced a sentencing range of twenty-five years to life or that the court could defer adjudication and place Torres on community supervision. The trial court did not orally warn Torres that, if he were not an American citizen, his plea of guilty could

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (Supp.).

[2]*See* TEX. PENAL CODE ANN. § 12.42(d).

[3]Torres told the trial court that he served about two-and-one-half years on the aggravated battery conviction and about eight years for the trafficking of methamphetamine conviction.

"result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4) (Supp.). Even so, Torres signed a written admonishment document that included that warning. The trial court then recessed for the preparation of a presentence investigation report.

The trial court re-convened on October 13, 2022, for sentencing. Torres told the trial court that he was fifty-seven years old, was born in Mexico, and had lived in Idaho and San Antonio. In addition to the aggravated battery and drug-trafficking convictions from Idaho, he admitted a "DUI" conviction, apparently also in Idaho. He also acknowledged having been convicted of at least one federal offense, "illegal re-entry" to the United States. He had an "ICE[4] hold" placed on him when arrested for the instant Hopkins County offense. Torres also was under indictment in Bexar County for another possession of a controlled substance charge.

When asked by the State about an arrest for burglary in Bexar County,[5] Torres told the trial court that his green card was "removed" because "Idaho failed to take it away when [he] got sentenced over there." After the Bexar County arrest, Torres was deported. Torres then returned, illegally, to the United States about five years later. He was caught entering the United States and sentenced to sixty months in federal custody. Torres told the trial court that he served "[a]lmost four" years of that sentence, after which he was again deported. He remained in Mexico about three years. Here, the record is not entirely clear, but apparently after those three years, Torres returned to the United States.

---

[4]Immigration and Customs Enforcement.

[5]The trial court said that charge was dismissed, and Torres agreed.

At the conclusion of the sentencing hearing, the trial court sentenced Torres to twenty-five years in the penitentiary.

## II.     Failure to Admonish Regarding Deportation Consequences

The Texas Code of Criminal Procedure requires a trial court to admonish a defendant pleading guilty of certain rights and consequences. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Supp.). Among those are that, "if the defendant is not a citizen of the United States," his conviction could have serious repercussions on the defendant's ability to remain in this country, including deportation. TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4). Article 26.13 allows the trial court to make most of the required admonishments "either orally or in writing,"[6] but requires that the subsection (a)(4) admonishments be made "both orally and in writing."[7] Failure to comply with Article 26.13's requirements is statutory error and is reviewed for nonconstitutional error. *See VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007); TEX. R. APP. P. 44.2(b).

### a.     Standard of Review

Where the trial court fails to give subsection (a)(4) admonishments both orally and in writing, a reviewing court considers "the record as a whole" to determine whether "we have a fair assurance that the defendant's decision to plead guilty would not have changed had the court admonished him." *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006). "[T]hree issues are particularly relevant to a 'fair assurance' inquiry: (1) whether an appellant knew the

---

[6]TEX. CODE CRIM. PROC. ANN. art. 26.13(d).

[7]TEX. CODE CRIM. PROC. ANN. art. 26.13(d-1).

consequences of his plea; (2) the strength of the evidence of an appellant's guilt; and (3) an appellant's citizenship and immigration status." *Loch v. State*, 621 S.W.3d 279, 282 (Tex. Crim. App. 2021) (quoting *VanNortrick*, 227 S.W.3d at 712). "However, the 'knowledge of the consequences of his plea' issue does not wholly swallow the other two issues. And the 'fair assurance' inquiry itself is not meant to utterly supplant the harm analysis that is called for by Rule 44.2(b), but rather to serve in aid of it." *Id.*; *VanNortrick*, 227 S.W.3d at 708, 710.

### b. Torres Knew the Consequences of His Plea

As summarized above, there were several statements by Torres establishing that he was aware of the possibility that he faced deportation or other negative immigration consequences as a result of his guilty plea. Torres acknowledged having twice before been deported from the United States. He admitted to having illegally re-entered the United States, being apprehended, and being sentenced to sixty months in prison for that offense. There were several references to the fact that an ICE detainer was in place for Torres. In his closing argument, the State said Torres was "likely to get deported." Torres also pled true to the two prior Idaho felony convictions, one of which was aggravated battery.[8] Finally, when the trial court asked him what he "anticipate[d]" or "expect[ed]" to happen after the instant proceeding, Torres said he hoped to be granted asylum because he had been "tortured" and felt "in danger" in Mexico.

On the record before us, we can "infer that [Torres] was actually aware of the immigration consequences of his plea." *Id.* at 283.

---

[8]Similar to the situation in *Loch*, when Torres pled guilty to the trial court, "he was a non-citizen who had already been convicted, while in this country," of an aggravated felony, i.e., aggravated battery. *Loch*, 621 S.W.3d at 284 n.1. "Under federal law, '[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable.'" *Id.* (alteration in original) (quoting 8 U.S.C. § 1227(2)(A)(iii)). "The United States Code defines an 'aggravated felony' to include 'a crime of violence . . . for which the term of imprisonment [is] at least one year[,]' . . . ." *Id.* (alterations in original) (quoting 8 U.S.C. § 1101(a)(43)(F), (G)).

### c. The Evidence of Torres's Guilt Was Strong

Torres pled guilty to the indictment and signed a judicial confession. He made no attempt to minimize his culpability when the offense was mentioned during the sentencing hearing.[9] He told the trial court, regarding the six months he had been in the Hopkins County Jail, that he "was gonna sign from the beginning," i.e., plead guilty, but the Idaho aggravated battery conviction was listed as an aggravated robbery charge, and he wanted that matter "cleared before [he] signed to that." When asked directly by the trial court if Torres had been stopped in Hopkins County in possession of methamphetamine, Torres answered, "Yes, sir. Yes, sir." As a result, "[t]here was no evidence that [Torres] was not guilty." *Anderson*, 182 S.W.3d at 921.

### d. Torres's Citizenship and Immigration Status

The record is clear that Torres was not a United States citizen. The trial court said to Torres, "Your [sic] having a loss of what was previously a legal status, legal resident status here . . . I'm not here at all about immigration policy and what's right in immigration policy and how all that . . . should happen." There is nothing in the record suggesting that Torres was a United States citizen or had any legal residential status. This is supported by the evidence of his twice being deported and having been arrested for illegally entering this country.

### e. The Trial Court's Failure to Orally Admonish Did Not Affect Torres's Substantial Rights

From the record before us, it is clear that Torres was not a citizen, and the evidence of his guilt was unchallenged. Most significant to our analysis, we find that the record shows that Torres was aware of the immigration consequences of pleading guilty. The trial court additionally said,

---

[9]Discussing the evidence, the trial court said, "We're here about 3.2 grams of methamphetamine, some of which had been smoked, according to the evidence already." Torres did not challenge that statement.

while questioning Torres, "[P]erhaps they won't send you back [to Mexico]." We, therefore, have a fair assurance that, even if the trial court had orally admonished Torres as required by Article 26.13(a)(4), Torres would have pled guilty to the indictment. For these reasons, we overrule Torres's first point of error.

### III.  Restitution Improperly Assessed in Judgment

In his second point of error, Torres complains that the trial court's judgment includes $180.00 restitution payable to the DPS Crime Laboratory. Torres correctly points out that the trial court, in assessing sentence, made no mention of restitution. Torres asks that we delete the $180.00. We sustain Torres's second point of error.

Torres correctly cites *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014), for the holding that, "when there is a conflict between the oral pronouncement and the written judgment, the oral pronouncement controls," and *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (orig. proceeding), for the proposition that "restitution is punishment." The judgment in Torres's case says that the $180.00 "restitution" is payable to the DPS Crime Laboratory.

However, payment to a law enforcement laboratory for "analysis, storage, or disposal of . . . . controlled substances . . . seized in connection with the offense" are reimbursement. TEX. CODE CRIM. PROC. ANN. art. 42A.301(a)(17) (Supp.). Notwithstanding the term used in the trial court's judgment, the $180.00 payable to the DPS Crime Laboratory is actually reimbursement, not restitution. *See Shircliff v. State*, 654 S.W.3d 788, 792 (Tex. App.—Waco 2022, no pet.) (treating $180.00 DPS laboratory fee not as "restitution or reparations, but rather a nonpunitive recoupment of the costs of judicial resources expended in connection with the trial of the case" and concluding "that the $180 DPS lab fee is a court cost"). That said, Article 42A.301 only

7

authorizes monies to be paid by an individual placed on community supervision. *See Aguilar v. State*, 279 S.W.3d 350, 352–53 (Tex. App.—Austin 2007, no pet.) ("A trial court can also order a defendant to pay lab fees, but only as a condition of community supervision.").

Here, the trial court entered an order the same date as the sentencing hearing and the judgment and waived court costs, attorney fees, and reimbursement. Further, the district clerk's bill of costs assessed no costs or amount due from Torres. Costs assessed against a convicted defendant must be supported by the record. *See Allen v. State*, 426 S.W.3d 253, 259 (Tex. App.—Texarkana 2013, no pet.). Because the trial court explicitly waived any responsibility for Torres to pay reimbursement and the bill of costs does not assess an amount due from him, we agree with Torres that the "restitution" imposed in the trial court's judgment should be deleted. As a result, we modify the trial court's judgment by deleting the entry of $180.00 as restitution to the DPS Crime Laboratory.[10]

---

[10]"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc)). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry*, 813 S.W.2d at 529–30).

## IV. Conclusion

As modified, we affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     December 27, 2023
Date Decided:       February 7, 2024

Publish