

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00484-CR

_____

LEROY WILLIAMS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. F19-858-431

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Leroy Williams appeals his enhanced conviction for assault family violence with a prior conviction and his resulting twenty-year sentence. In one issue, Williams argues that the trial court failed to properly admonish him when he pleaded guilty to the State's indictment, and his plea was therefore involuntarily entered. Because we conclude that Williams was not harmed by the trial court's failure to admonish him on the punishment range for his conviction and on the possible deportation consequences of entering his plea, we affirm.

## II. BACKGROUND

The complainant in this case is the mother of Williams's two children. In the early morning hours of January 22, 2019, Williams entered her apartment through a window and repeatedly struck her in the face until her eyes swelled shut. A neighbor who heard the event called 911, and police came to the apartment. Although Williams attempted to evade them, officers eventually apprehended Williams and arrested him. Later, the State charged Williams with assault family violence with a prior conviction.

On December 6, 2019, the trial court conducted a pretrial hearing to determine whether Williams's case would be severed from other charges pending against him. In all, Williams had six different outstanding charges—four charging felony assault family violence, one charging theft from a person, and one charging felony retaliation. At the hearing, the trial court discussed with Williams the potential punishment ranges

for the varying charges and the potential that these ranges could be enhanced, and Williams said that he understood the possible punishments. Specific to this appeal, the trial court instructed Williams that if he were convicted for one of the third-degree felony charges, and the State could prove one enhancement[1] regarding a prior conviction, then the charge would elevate to a second-degree felony, and Williams would face a sentencing range between two and twenty years.

The trial court also held another pre-trial hearing on Williams's attorney's motion to withdraw, which the trial court denied. At that hearing, Williams made it clear that he intended to accept culpability for the January 22 assault. Indeed, Williams told the trial court that he was "a grown man" who was going to "accept punishment." He also told the trial court, "I will take the blame for that I did this. I will own up to what I did."

On the morning of trial, Williams agreed to plead guilty to one count of assault family violence with a prior conviction in exchange for the State's agreeing to dismiss the retaliation charge.[2] Williams elected to have a jury assess punishment. Outside the presence of the venire panel, and as Williams pleaded guilty to the charge, the trial court inquired whether Williams was "entering this plea of guilty freely and voluntarily." Williams said that he was. At the time, however, the trial court did not

---

[1]As explained in more detail below, the trial court also outlined the ranges for a non-enhanced conviction and a double-enhanced conviction.

[2]The record does not contain any plea-bargain paperwork.

admonish Williams about either the punishment range or any potential deportation consequences of his plea.

Prior to the venire panel being seated, the parties discussed Williams's prior criminal record. Williams's attorney objected to the State discussing a prior Mississippi conviction for manufacture and delivery that occurred when Williams was sixteen years old. The trial court agreed and ordered the State not to mention the conviction.

Shorty after, the venire panel was brought in, and Williams again pleaded guilty to assault family violence with a prior conviction. Much like before, the trial court inquired of Williams whether he was entering the plea freely and voluntarily, which Williams acknowledged, but the trial court again failed to admonish him on the punishment range of his conviction or any possible deportation consequences of his pleading guilty.

During voir dire, and in Williams's and his attorney's presence, the State discussed the applicable punishment range several times with the members of the venire panel. After the jury was seated, Williams pleaded not true to the State's enhancement paragraph, and the parties then gave opening statements. During the State's opening statements, the prosecutor again discussed the punishment range that Williams was facing: "[B]ecause in this portion of trial we are also going to prove to you that [Williams has] been to prison before, he's already been through this before, that range is enhanced to two to 20 years."

The State then proceeded to call thirteen witnesses, including the complainant in this case, who all testified about either the events of January 22 or Williams's multiple prior assaults on the complainant. The State also introduced numerous photographs depicting the complainant's injuries. And the State elicited testimony from a witness to prove its alleged enhancement.

After both parties closed, the trial court read its charge to the jury. Williams and his attorney were present. Specifically, the trial court read the charge, which stated that the jury would assess a "term of years not less than two years nor more than 20 years" and that the jury could also assess up to a $10,000 fine. Eventually, the jury returned a sentence of twenty years' incarceration. The trial court rendered judgment and sentence accordingly, and this appeal followed.

### III. DISCUSSION

In his sole issue, Williams argues that the trial court "failed to properly admonish [him] about his rights and ability to enter a plea of guilty and determine facts necessary for accepting that plea in violation of Texas Code of [Criminal] Procedure Article 26.13 and the due process clause of the Fourteenth Amendment." The State concedes that the trial court did not admonish Williams regarding the sentencing range or possible consequences of his plea but argues that the trial court's failure to do so was harmless. We agree with the State.

5

## A. Due Process

To begin with, we conclude that any claim by Williams based on the Due Process Clause of the Fourteenth Amendment is inadequately briefed. *See Pender v. State*, No. 02-13-00400-CR, 2014 WL 1859110, at *2 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op., not designated for publication). As this court explained in *Pender*, whether Article 26.13 and due process were violated are two separate inquiries. *See id.*; *see also Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). By arguing that the absence of the required Article 26.13 admonishments rendered his plea involuntary and violated his due-process rights, Williams improperly conflates these two standards and presents nothing for our review regarding the Due Process Clause. *See, e.g., Sherrill v. State*, No. 06-05-00159-CR, 2005 WL 3555581, at *3 n.3 (Tex. App.—Texarkana Dec. 30, 2005, no pet.) (mem. op., not designated for publication) (holding single issue asserting that absence of Article 26.13 admonishments both rendered appellant's plea involuntary and violated his due-process rights was multifarious). Thus, we will address Williams's sole issue as he substantively briefed it—as an issue attacking the voluntariness of his plea based on the absence of the statutory admonishments.

## B. Standard of Review for Absence of Article 26.13 Admonishments

Article 26.13 provides that before accepting a guilty plea, the trial court shall admonish the defendant orally or in writing of (1) the applicable punishment range, (2) the fact that the State's punishment recommendation is not binding on the trial

6

court, (3) the limitation on appeal if the punishment assessed does not exceed that recommended by the State, (4) the conviction's deportation consequences, (5) the sex-offender-registration requirements when applicable to a defendant, and (6) the impact of successfully completing community supervision. Tex. Code Crim. Proc. Ann. art. 26.13(a)(1)–(6). Because Williams pleaded guilty without a sentencing recommendation from the State, the admonishments regarding the effects of a plea-bargain agreement on the trial court and on the right to appeal do not apply. *Id.* art. 26.13(a)(2)–(3). Also, the sexual-offender-registration admonishment did not apply to the assault family violence charge, and Williams was not placed on community supervision. *Id.* art. 26.13(a)(5)–(6). Therefore, the only remaining applicable Article 26.13 requirements to address are the admonishments (1) regarding the range of punishment and (2) the potential deportation consequences Williams could face. *Id.* art. 26.13(a)(1), (4).

Substantial compliance with these requirements is sufficient unless the defendant affirmatively shows that he was not aware of the consequences of his plea and that he was misled or harmed. *Id.* art. 26.13(c). A total failure to deliver a required admonishment is not substantially compliant and is, therefore, error; however, such a failure is subject to a harmless-error analysis under Rule 44.2(b) as non-constitutional error. Tex. R. App. P. 44.2(b); *Bessey v. State*, 239 S.W.3d 809, 813 (Tex. Crim. App. 2007); *Aguirre–Mata v. State*, 125 S.W.3d 473, 473, 475–76 (Tex. Crim. App. 2003); *High v. State*, 964 S.W.2d 637, 638 (Tex. Crim. App. 1998). "[T]o

7

warrant a reversal on direct appeal, the record must support an inference that appellant *did not know* the consequences of his plea." *Burnett v. State*, 88 S.W.3d 633, 638 (Tex. Crim. App. 2002). We must determine independently whether the trial court's failure to admonish Williams about the punishment range and the deportation consequences of his plea materially affected his decision to plead guilty and, thus, affected his substantial rights. *See id.* at 639. Neither Williams nor the State bear any burden of proof on this issue. *See VanNortrick v. State*, 227 S.W.3d 706, 709 (Tex. Crim. App. 2007).

### 1. Punishment Range

The record indicates that although the trial court failed to admonish Williams of the punishment range for his conviction at the time that he pleaded guilty, Williams was informed of the punishment range at numerous times during these proceedings. Indeed, Williams was informed of the punishment range at a pretrial hearing, during voir dire, during the State's opening statements, and when the trial court read its charge to the jury.

#### a. Pretrial Hearing

At a pretrial hearing, the trial court informed Williams that he was facing several different charges. The trial court explained that Williams had been charged with multiple third-degree felonies and asked Williams whether he understood that the charges each carried a "punishment range of two years minimum and ten years maximum?" Williams acknowledged that he understood. The trial court went on to

8

explain that the State had filed an intent to "enhance the punishment range in the event of a conviction." The trial court stated that "a single enhancement by proof of a prior felony conviction would raise the punishment range to a second degree felony, two years minimum and 20 years maximum, with an optional $10,000 fine." Williams again agreed that he understood. And finally, the trial court explained to Williams that "if the State were able to prove two prior consecutive felony convictions, which they have provided notice of, that would elevate the punishment range to 25 years minimum up to 99 years or life in prison." Williams said that he understood.

Ultimately, the State only sought one enhancement, and Williams pleaded guilty to assault family violence. The jury found the enhancement allegation true, and thus, just as the trial court had explained, his otherwise third-degree felony was enhanced to a second-degree felony. Accordingly, Williams faced the two-to-twenty-year punishment range that the trial court had explained to him and that he acknowledged understanding at the pre-trial hearing.

### b. *Voir Dire and Opening Statements*

At voir dire, and in Williams's and his attorney's presence, the State openly discussed that the charge to which Williams had pleaded guilty, if the enhancement allegation were found true, carried with it a punishment range of "two to 20 years, and an optional fine up to $10,000." In fact, the prosecutor mentioned this punishment range several times during voir dire. The prosecutor also mentioned the proper punishment range during opening statements at the punishment hearing. Neither

Williams nor his attorney objected to the State's discussion of the punishment range during voir dire or opening statements, and neither attempted to withdraw Williams's plea after the State had thoroughly discussed the punishment range.

### c. The Jury Charge

After the State and defense had rested at the punishment phase of trial, the trial court read its charge to the jury. Again, in Williams's and his attorney's presence, the trial court explained the punishment range associated with Williams's plea and the jury having found the enhancement allegation true. Specifically, the trial court stated that the jury would assess a "term of years not less than two years nor more than 20 years" and that the jury could also assess up to a $10,000 fine. Neither Williams nor his attorney objected.

As explained, Williams was present for each of these instances in which the punishment range for assault family violence with an enhancement was mentioned. At no time did Williams or his attorney object or attempt to withdraw Williams's guilty plea based on the stated range of punishment. And defense counsel did not attempt to develop a record to support a motion for new trial on the grounds that Williams's plea was not knowing or voluntary. The record, therefore, does not suggest that Williams was unaware of the applicable punishment range and contains no indication that he did not know the punishment range to which he would be subject. *See Burnett*, 88 S.W.3d at 638–39.

Although an express acknowledgment by Williams that he was specifically aware of the applicable punishment range would be "helpful" to our review, the lack of such evidence alone does not show that Williams was unaware of the consequences of his plea. *Id.* at 641. We hold that Williams's substantial rights were not affected—thus, he was not harmed by the absence of an express admonishment by the trial court under Article 26.13(a)(1) regarding the range of punishment attached to his conviction. *See Davison*, 405 S.W.3d at 689; *see also Aguirre–Mata*, 125 S.W.3d at 476–77 ("The record contains references to the correct punishment range and there is nothing in the record that shows appellant was unaware of the consequences of his plea or that he was misled or harmed."); *Valdez v. State*, 326 S.W.3d 348, 351 (Tex. App.—Fort Worth 2010, no pet.) (mem. op.) ("A defendant is deemed to have notice of the punishment range, and the trial court's failure to admonish on the punishment range does not affect the defendant's substantial rights where the attorneys, with the defendant present, explain the specific range of punishment to the venire during voir dire.").

## 2. Potential Deportation Consequences

Similarly, Williams's substantial rights were not affected by the trial court's failure to admonish him of the potential deportation consequences of his guilty plea. The failure to admonish a defendant as required under Article 26.13(a)(4) is harmless when the defendant is a United States citizen because the threat of deportation could not have influenced the defendant's decision to plead guilty. *VanNortrick*, 227 S.W.3d

11

at 713. Even though an assumption that Williams is a United States citizen would be improper, we may make reasonable inferences from facts in the record. *See Fakeye v. State*, 227 S.W.3d 714, 716–17 (Tex. Crim. App. 2007); *VanNortrick*, 227 S.W.3d at 710–11.

There are a number of facts in this record from which we may reasonably infer Williams is a United States citizen. First, the record demonstrates that Williams has at least four prior convictions, and there is no evidence that he has ever been deported. Second, the record demonstrates that Williams has a Social Security number and a Mississippi driver's license number. Third, the record demonstrates that at the time that he entered his plea, Williams was nearly twenty-six-years old and that he had been convicted of a crime in Mississippi at the age of sixteen, indicating that he has lived in the United States for a long time and in multiple states. Fourth, as reflected in hospital records admitted at trial, Williams's primary language is English, and there is no indication that Williams had a problem speaking or understanding the English language at multiple trial court settings. Indeed, Williams never needed an interpreter throughout these proceedings. Furthermore, Williams has filed a number of handwritten, pro se documents both in the trial court and in this court, and he has filled out a number of forms in this case. These documents and forms all indicate that Williams possesses a proficiency in writing the English language. On one of the forms Williams filled out, he specified that he could "read, write, [and] understand the English language."

12

This record, when considered as a whole, supports the reasonable inference that Williams is a United States citizen. *See Pender*, 2014 WL 1859110, at \*2 (holding it reasonable to infer appellant was a United States citizen when he had a social-security number, a Texas identification card, and a Texas driver's license, and defendant had two prior convictions that would have subjected him to deportation if he had not been a United States citizen); *Burton v. State*, No. 2–06–279–CR, 2007 WL 3037840, at \*2–3 (Tex. App.—Fort Worth Oct. 18, 2007, pet. ref'd) (mem. op., not designated for publication) (holding it reasonable to infer that appellant was a United States citizen when he had demonstrated speaking English without a foreign accent, he had extensive family in Texas, and he had several prior convictions without any evidence of ever being deported). Therefore, Williams was not harmed by the absence of the admonishment informing him of the potential deportation consequences of his plea. *See* Tex. R. App. P. 44.2(b); *VanNortrick*, 227 S.W.3d at 709, 713. We overrule Williams's sole issue.

## IV. CONCLUSION

Having overruled Williams's sole issue on appeal, we affirm the trial court's judgment.

/s/ Dana Womack
Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 15, 2020