

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0894-18

**VITH LOCH, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

YEARY, J., delivered the opinion of the Court in which KELLER, P.J., and RICHARDSON, KEEL, SLAUGHTER, and McCLURE, JJ., joined. HERVEY, NEWELL, and WALKER, JJ., concurred in the result.

## O P I N I O N

Appellant, Vith Loch, a Cambodian national, pled guilty to murder. A jury then assessed his punishment at confinement for life and a $10,000.00 fine. The First Court of Appeals reversed. It held that the trial court erred when it failed to properly admonish Appellant about the potential immigration consequences of his guilty plea and, importantly, that the trial court's error was not harmless. *See Loch v. State*, No. 01-16-00438-CR, 2018 WL 3625190 (Tex. App.—Houston [1st Dist.] July 31, 2018) (mem. op., not designated

for publication); TEX. CODE CRIM. PROC. art. 26.13(a)(4). We granted the State Prosecuting Attorney's (SPA) petition for discretionary review to determine whether the court of appeals erred by concluding that the failure to admonish Appellant was not harmless.

## I.     BACKGROUND

### a.     The Plea

In 2016, at a pre-trial arraignment hearing on his murder charge, Appellant entered a plea of guilty. He also pled true to a single enhancement paragraph from his indictment. The trial court then gave Appellant a perfunctory pre-plea admonishment that included only the range of punishment that he faced. Appellant subsequently entered his plea of guilty before a jury, and a trial was had on the issue of his punishment. Both Appellant and the SPA agree that, prior to the entry of his pleas, the trial court failed to admonish him about the possibility that his plea might result in his deportation.

### b.  The Appeal

On direct appeal, Appellant complained that his plea was involuntary because of the trial court's failure to admonish him, pursuant to Article 26.13(a)(4), that pleading guilty might result in his deportation. Article 26.13(a)(4) of our Code of Criminal Procedure provides that, "[p]rior to accepting a plea of guilty . . . , the court shall admonish the defendant of: . . . the fact that if the defendant is not a citizen of the United States of America, a plea of guilty . . . for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law[.]" TEX. CODE CRIM. PROC. art. 26.13(a)(4). The court of appeals reversed and remanded, holding that the trial court erred by failing to include the admonishment, and that this error was

harmful. *Loch*, 2018 WL 3625190, at *3. Although the court of appeals acknowledged in its harm analysis that the strong evidence of Appellant's guilt "unquestionably favor[ed] the State," it concluded that it made no difference here because there was no evidence that Appellant knew about the deportation consequences of his plea. *Id*. Referencing the "fair assurance" standard that this Court announced in *VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007), the court of appeals concluded that "we cannot have fair assurance that his decision to plead guilty would not have changed had the trial court admonished him of the possible deportation consequences of his guilty plea." *Id.*

### c. Discretionary Review

In its petition for discretionary review, the SPA argues that Appellant was already removeable before he pled guilty as a result of his several prior convictions, including felonies in both Florida and Texas, and that, as a result, any failure on the trial court's part to admonish him about possible deportation as a result of his guilty plea must have been harmless. In addition, the SPA argues that Appellant would not have changed his guilty plea, even if he had been admonished, because he knew he was already removeable, there was strong evidence of his guilt, and he was morally motivated to plead guilty. We agree that the trial court's error was harmless, and we reverse the decision of the court of appeals.

### II. APPLICABLE LAW

The failure to give Article 26.13 admonishments is non-constitutional error. *VanNortrick*, 227 S.W.3d at 708 (explaining that, because Article 26.13's admonishments are statutory, not constitutional, the failure to admonish a defendant under this section is non-constitutional error). Non-constitutional error resulting from a trial court's failure to admonish a defendant pursuant to Article 26.13(a) is subject to a harmless error analysis

under Texas Rule of Appellate Procedure 44.2(b), which examines whether the defendant's substantial rights were affected. *Davison v. State*, 405 S.W.3d 682, 688 (Tex. Crim. App. 2013) ("Indeed, because [an alleged violation of Article 26.13(a)] is predicated solely upon a statutory violation, the standard for determining harm that pertains to claims of non-constitutional error applies—Rule 44.2(b)."). Rule 44.2(b) provides that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b).

To decide whether Appellant's substantial rights were affected, a reviewing court must independently examine the record as a whole. *VanNortrick*, 227 S.W.3d at 708–09. Neither party has the burden to prove harm or harmlessness. *Burnett v. State*, 88 S.W.3d 633, 638 (Tex. Crim. App. 2002). The Court has said in the past that the important question in examining admonishment harm under Rule 44.2(b) is, "considering the record as a whole, do we have a fair assurance that the defendant's decision to plead guilty would not have changed had the court admonished him?" *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006); *VanNortrick*, 227 S.W.3d at 709. The Court has also said that three issues are particularly relevant to a "fair assurance" inquiry: (1) whether an appellant knew the consequences of his plea; (2) the strength of the evidence of an appellant's guilt; and (3) an appellant's citizenship and immigration status. *VanNortrick*, 227 S.W.3d at 712. However, the "knowledge of the consequences of his plea" issue does not wholly swallow the other two issues. And the "fair assurance" inquiry itself is not meant to utterly supplant the harm analysis that is called for by Rule 44.2(b), but rather to serve in aid of it.

The issues that are addressed by a "fair assurance" inquiry are meant to be weighed by a reviewing court with an ultimate view toward determining whether an appellant's

"substantial rights" have been violated by a trial court's error. *Id.* Consequently, in cases in which we have been able to definitively determine, either that a defendant will not be deported (because he *is* a United States citizen), or that he is already unavoidably deportable regardless of the decision to plead guilty, we have found that the failure to admonish was harmless. *See State v. Guerrero*, 400 S.W.3d 576, 588–89 (Tex. Crim. App. 2013) (undocumented immigrant deportable for that reason alone); and *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (United States citizen not subject to deportation). The "fair assurance" inquiry presumes that Appellant is aware of the strength of the evidence of his guilt and his actual citizenship and immigration status as revealed by a complete and fair reading of the record.

### III.    ANALYSIS

When Appellant entered his plea, he stipulated that he had six prior convictions, in Texas and Florida. Those six prior convictions were:

> (1) Felony Aggravated Assault with a Deadly Weapon (Texas 1990);
>
> (2) Felony Burglary of a Habitation (Texas 1990);
>
> (3) Misdemeanor Possession of Marijuana (Texas 1996);
>
> (4) Second-Degree Felony Flight with Disregard for Safety to Persons (Florida 2005);
>
> (5) Misdemeanor False Name or Identity to Police (Florida 2005); and
>
> (6) Third-Degree Felony Neglect of Child (Florida 2005).

The record also contains a penitentiary packet ("pen packet") with information about Appellant's prior convictions from Florida. The pen packet shows that an Immigration and Customs Enforcement (ICE) detainer was issued for Appellant in Florida on December 20,

2005. And, while other detainers reflected in the packet show that they were eventually removed, the ICE detainer was not removed, even up to the date of the creation of the pen packet on December 15, 2015. This detainer "serves to advise . . . that the [government] seeks custody of [Appellant], for the purpose of arresting and removing [him]." 8 C.F.R. § 287.7. Nothing else in this record suggests that the federal government has relinquished its efforts to arrest Appellant and remove him from the country.

The trial court did not admonish Appellant about any possible deportation consequence that might have resulted from his plea. In fact, Appellant was admonished, by the trial court, only about the punishment range for the offense in light of the enhancement allegation to which he had pled true. Counsel took Appellant on a brief *voir dire* to demonstrate that Appellant was aware that he could have challenged the evidence of his guilt and that it was Appellant's choice to plead guilty instead; but this exchange did not reach the issue of whether he was aware of the possible immigration consequences of his plea. We cannot, on this record, infer that he was actually aware of the immigration consequences of his plea.

The evidence of Appellant's guilt, however, was quite strong. Multiple witnesses testified that Appellant confessed his guilt to them. In *VanNortrick*, where we could not determine that the appellant knew the potential immigration consequences of his plea, we decided that "the strength or weakness of the evidence against [the appellant in that case made] little difference to the harm analysis in the context of the whole record." *VanNortrick*, 227 S.W.3d at 713. However, the record of this case is not on all fours with *VanNortrick*.

In *VanNortrick*, the appellant had one prior felony conviction from a different state, years prior to the entry of his plea. The State argued that the fact that he still had not been deported allowed for an inference that he was a United States citizen. But the Court rejected that argument. The Court explained that the record was "not entirely 'silent' on the appellant's citizenship and immigration status" because it showed the one prior deportable felony conviction, but "neither [was] it enough to support the inferences the State urge[d]." *Id*. at 711. The Court explained that there was no guarantee that Appellant would have been deported had he not been a citizen, and that "[t]here [were] simply too many possible scenarios by which a non-citizen who ha[d] been convicted of a deportable offense could have escaped the immigration consequences of his conviction." *Id*.

Here, we know that Appellant is not a citizen. We also know that he does not have just one single prior felony conviction from a different state, but instead multiple prior convictions, including felony convictions, from both Florida and Texas. We think it safe to assume that Appellant was aware of his own citizenship status (that he was not a citizen of this country). After all, he requested notification of the Cambodian consulate, suggesting knowledge that he was not a United States citizen. We also think it safe to assume that he knew that he had previously been convicted of multiple serious crimes while residing in this country. He did stipulate to all six convictions. But perhaps more importantly, we know that the federal government filed an ICE detainer against Appellant in Florida, on December 20, 2005, seeking to arrest and deport him, and that the detainer was not removed, even as late as December 21, 2015. Even Appellant concedes in his brief on discretionary review that "it may have been true that, as the State argues, 'Appellant was removable as a matter of law before his guilty plea[.]'" Appellant's Brief at 6. But he

contends that he was "not necessarily removable as a matter of **fact**, due to the volatility of relations between the United States and his home country of Cambodia[,]" and that the record is silent about whether he actually **knew** he was removable. *Id.* (emphasis in original).

Federal immigration law is complex and subject to change. *See Demore v. Kim*, 538 U.S. 510, 521 (2003); *Martinez v. State*, No. PD-1338-11, 2012 WL 1868492, at *3 (Tex. Crim. App. 2012) (not designated for publication). There are even periods of time when the federal executive branch refuses to enforce it. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 482 n.4 (1991) (noting that the purpose behind the legalization programs in the Reform Act was the past failure to enforce the immigration laws). So, it is of course *possible* that Appellant may never be removed from the United States. On the other hand, it is also possible that, if he ever is removed, the United States Government *may* even rely in whole or in part upon his conviction in this case to compel his removal. But it is clear to this Court that, at the time of his plea, he was likely already subject to removal for multiple reasons.

A single prior felony conviction can lead to the deportation of a non-United States citizen. But as a non-citizen, Appellant's numerous prior criminal convictions, including felonies in two states, presented what must be described as serious obstacles to his ability to avoid deportation.[1] And the Florida pen pack reflects that, as of December 21, 2015, the federal government still sought to arrest and remove Appellant from the country.

---

[1] First, at the time of Applicant's guilty plea, he was a non-citizen who had already been convicted, while in this country, of aggravated assault with a deadly weapon and burglary of a habitation. Under federal law, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(2)(A)(iii). The United States Code defines an

All of this suggests to us a strong likelihood that, even had Appellant been properly admonished, pursuant to Article 26.13(a)(4), that his plea "*may* result in deportation, exclusion from admission . . . , or denial of naturalization," it would not have made a difference in his decision whether to plead guilty. TEX. CODE CRIM. PROC. Art. 26.13(a)(4) (emphasis added). Again, the question is not whether Appellant will in fact be deported, but only whether he is appreciably more susceptible to deportation now than he was before he entered his guilty plea in the instant case. If he was already susceptible to deportation, regardless of whether he may ever actually be deported, then the lack of an admonishment in this case cannot have been harmful.

A strong likelihood of Appellant's removal already existed, and it would not have appreciably changed regardless of whether Appellant pled guilty, or he went to trial on the question of his guilt and was acquitted. *See Guerrero*, 400 S.W.3d at 588–89 ("Had

---

"aggravated felony" to include "a crime of violence . . . for which the term of imprisonment [is] at least one year[,]" as well as "[a] burglary offense for which the term of imprisonment [is] at least one year[.]" 8 U.S.C. § 1101(a)(43)(F), (G). Further, "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. 1227(a)(2)(A)(ii).

Second, Applicant was likely inadmissible to the United States at the time he pled guilty. Applicant had more than two prior convictions. "Any alien convicted of 2 or more offenses (other than purely political offenses), regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years or more is inadmissible." 8 U.S.C. § 1182(a)(2)(B).

Finally, Applicant was likely ineligible for cancellation of removal by the Attorney General. There are certain circumstances under which the Attorney General can cancel the removal of an alien who is inadmissible or deportable. However, an alien who has been convicted of certain criminal offenses—including crimes of moral turpitude and crimes for which the sentence imposed was one year or longer—is ineligible for cancellation of removal by the Attorney General. 8 U.S.C. § 1229b(b)(1)(C).

appellee gone to trial with counsel and been acquitted he would not have been transformed into a legal resident. He could have been deported immediately after walking out of the criminal courthouse."). The fact that this strong likelihood existed, combined with the fact that the evidence of guilt in this case was strong, leads us to conclude that, even had he been properly admonished, it would not have had an impact on his decision to plead guilty. Of this we have a fair assurance.

## IV.    CONCLUSION

Because Appellant was likely already subject to removal when he entered his guilty plea in this case, and because of the strong evidence of Appellant's guilt, we have a fair assurance that Appellant would not have changed his mind about entering the plea, even had he been properly admonished by the trial court. Under these circumstances, we conclude that Appellant's substantial rights were not affected. The judgment of the court of appeals is reversed, and this cause is remanded to that court for resolution of Appellant's remaining points of error.

DELIVERED:                    April 28, 2021
PUBLISH